194 P.3d 1163

In the Matter of the ARBITRATION BE-TWEEN UNITED PUBLIC WORKERS, AFSCME, LOCAL 646, AFL–CIO, Union–Appellant,

and

CITY AND COUNTY OF HONOLULU, Environmental Services (Griev. of Dennis Motonaga re 20–day suspension); Sec. 1, 11, 14, 63; Unit 1; LK–05–09; (2005–140), Employer–Appellee.

No. 28110.

Intermediate Court of Appeals of Hawai'i.

Oct. 27, 2008.

Herbert R. Takahashi and Rebecca L. Covert (Takahashi Vasconcellos & Covert), Honolulu, on the briefs, for union-appellant.

Paul K.W. Au, deputy corporation counsel, City and County of Honolulu, on the briefs, for employer-appellee.

WATANABE, PRESIDING J., FOLEY, and NAKAMURA, JJ.

Opinion of the Court by WATANABE, Presiding J.

The question we must address in this appeal is whether, under Hawaii Revised Statutes (HRS) § 658A–25(c) (Supp.2007), which is part of the Revised Uniform Arbitration Act (RUAA) adopted by the Hawai'i Legislature in 2001 and codified in HRS chapter 658A, Union–Appellant United Public Workers, AFSCME, Local 646, AFL–CIO (UPW or Union), representative of real party in interest Dennis Motonaga (Motonaga), was entitled to an award of attorney's fees incurred during a proceeding filed against Motonaga's employer, Employer–Appellee City and County of Honolulu, Department of Environmental Services (City or Employer) to enforce an uncontested judgment confirming an arbitration award.

We conclude that the Circuit Court of the First Circuit [1] (circuit court) correctly concluded that HRS § 658A–25(c) does not authorize an award of attorney's fees in such situations.

## BACKGROUND

The UPW and the City were parties to a collective-bargaining agreement (Agreement) that covered blue-collar, non-supervisory employees in Unit 1 [2] for the period July 1, 2003 to June 30, 2005. Pursuant to section 15 of

---

1. The Honorable Gary W.B. Chang presided.

2. HRS § 89–6(a) (Supp.2007) currently provides, as it did during all times relevant to this case, as follows: "All employees throughout the State within any of the following categories shall constitute an appropriate bargaining unit: (1) Non-supervisory employees in blue collar positions[.]" (Formatting adjusted.)

the Agreement,[3] "[a] grievance that arises out of alleged Employer violation, misinterpretation, or misapplication of this Agreement, its attachments, exhibits, and appendices" may be submitted for resolution through a grievance procedure that culminates in final and binding arbitration.

Section 63.06 a.1. of the Agreement provided that "[t]he Employer shall conduct random alcohol and controlled substance tests of Employees." However, pursuant to section 63.06 e. of the Agreement, "[a]n [e]mployee shall only be randomly tested for alcohol while the [e]mployee is performing safety[-]sensitive functions as provided in Section 62.02 k." [4]

On or about January 28, 2005, the City randomly tested Motonaga, a wastewater-collection-system repairer, for the presence of alcohol. When Motonaga tested positive, the City suspended him for twenty days and imposed other disciplinary sanctions on him. On February 17, 2005, the UPW filed a grievance on Motonaga's behalf that proceeded to arbitration.

On January 13, 2006, the arbitrator [5] entered an Arbitration Decision and Award (Arbitration Decision), which concluded that "[t]he random alcohol testing of [Motonaga] on or about January 28, 2005 was improper because Motonaga was not assigned to perform, or to be in immediate readiness to perform, a safety[-]sensitive function at the time the test was conducted." The Arbitration Decision ordered the following remedial relief to Motonaga:

2. Employer shall rescind the twenty (20) day disciplinary suspension imposed on Motonaga dated February 1, 2005.

3. *Employer is hereby also ordered to provide to Motonaga within sixty (60) days* [6] *of the date of this decision and award the following,* based on losses sustained by him following the improper random alcohol test conducted on January 28, 2005, the disciplinary suspension imposed following the positive alcohol test results of January 28, 2005, and the mandatory substance abuse treatment he was required to undertake:

a. Payment of twenty days [sic] lost wages for the improper disciplinary suspension imposed on Motonaga on and after January 28, 2005;

b. Restoration of three hundred and fifty-two hours of sick leave used by Motonaga following the improper disciplinary suspension imposed on Motonaga;

c. Payment of wages for four hours at Motonaga's straight time rate of pay applicable at that time for attending sessions with substance abuse professionals;

d. Reimbursement of one hundred forty and 34/100 dollars ($140.34) for out of pocket expenses incurred by Motonaga for

---

3. Section 15 of the Agreement is consistent with HRS § 89–10.8(a) (Supp.2007), which provides now, as it did during all times relevant to this case, in pertinent part, as follows:

   **Resolution of disputes; grievances.** (a) A public employer shall enter into written agreement with the exclusive representative setting forth a grievance procedure culminating in a final and binding decision, to be invoked in the event of any dispute concerning the interpretation or application of a written agreement.

4. Section 63.02 k. of the Agreement provided as follows:

   *SAFETY SENSITIVE FUNCTION.*
   Work functions are as follows:
   *63.02 k.1.* Time at a facility waiting to be dispatched until the Employee ends work.
   *63.02 k.2.* Time inspecting equipment as required by federal regulations or otherwise inspecting, servicing, or conditioning any [commercial motor vehicle (CMV)] at any time.
   *63.02 k.3.* Time driving.

*63.02 k.4.* Time, other than driving time, in or on any CMV, except time spent resting in a sleeper berth.
*63.02 k.5.* Time loading or unloading a vehicle, supervising, or assisting in the loading or unloading, attending a vehicle being loaded or unloaded; remaining in readiness to operate the vehicle, or in giving receipts for shipments loaded or unloaded.
*63.02 k.6.* Time repairing, obtaining assistance, or remaining in attendance of a disabled vehicle.

5. Ronald T. Fujiwara presided as arbitrator.

6. The UPW states in its various filings that sixty days from the January 13, 2006 Arbitration Decision was March 16, 2006, and the City has not challenged these statements. According to our calculations, sixty days from January 13, 2006 was March 13, 2006. Nevertheless, for purposes of this opinion, we will assume that the sixty-day deadline under the Arbitration Decision expired on March 16, 2006.

services rendered by a substance abuse professional;

e. Payment of wages for one hundred and four hours at Motonaga's straight time rate of pay applicable at that time for attending and participating in addiction treatment sessions at the Salvation Army;

f. Payment of wages for thirty-eight hours and twenty minutes at Motonaga's straight time rate of pay applicable at that time for attending Alcoholics Anonymous/Narcotics Anonymous community sessions;

g. Payment of wages for forty-eight hours and twenty minutes at Motonaga's overtime rate of pay applicable at that time for attending Alcoholics Anonymous/Narcotics Anonymous community sessions; and

h. Payment of mileage for one thousand five-hundred and forty-eight miles at a rate of thirty-seven cents ($.37) a mile for Motonaga traveling to and from his home to sessions with substance abuse professionals, addiction treatment sessions at the Salvation Army and Alcoholics Anonymous/Narcotics Anonymous community sessions.

4. The Employer shall be allowed to take all applicable deductions, including but not limited to state and federal income taxes and FICA/OASDI charges, from the wages due to Motonaga under this award.

5. The Employer shall remove and destroy any and all derogatory materials relating to the improper testing of Motonaga, the disciplinary suspension and mandatory substance abuse treatments on and after January 28, 2005.

6. No adverse action shall be taken against Motonaga by reason of the improper testing, suspension and participation in the mandatory substance abuse testing program on and after January 28, 2005.

(Footnote added.)

On January 18, 2006, the Union filed with the circuit court a "Motion to Confirm Arbitrator Ronald T. Fujiwara's Arbitration Decision and Award Dated January 13, 2006" (Motion to Confirm). On February 6, 2006, the City responded by filing "Employer's Statement of Position Regarding Union's [Motion to Confirm,]" which made clear that the City did not oppose the confirmation but reserved the right to review any order entered with respect to the Motion to Confirm:

COMES NOW Employer ... by and through its attorneys, ... *and hereby states that Employer does not oppose the Union's Motion to Confirm Arbitrator Ronald T. Fujiwara's Arbitration Decision and Award dated January 13, 2006,* filed January 18, 2006.

Notwithstanding the foregoing, Employer and its attorneys reserve the right to review, prior to submittal to the court, any order entered with respect to said Motion, and the right to object to the form of said order.

(Emphasis added.) The transcript of the February 14, 2006 hearing on the Motion to Confirm is less than a page. After the parties introduced themselves, the following colloquy ensued:

THE COURT: All right, good afternoon. Please have a seat. The City has no objection?

[City's Attorney]: That's correct, Your Honor.

THE COURT: All right. The Court has reviewed the motion and the record and file and concludes that there is good cause to grant the motion so the Court will grant the motion to confirm the arbitrator's award.

[UPW's Attorney], would you be so kind as to prepare an appropriate order?

[UPW's Attorney]: Yes. Thank you.

THE COURT: All right. Thank you very much.

[City's Attorney]: Thank you.

On March 7, 2006, the circuit court entered an "Order Granting [Union's Motion to Confirm]" that recites that at the February 14, 2006 hearing on the motion, the City "present[ed] no position to the Union's Motion [to Confirm.]" The judgment was entered the next day, March 8, 2006.

When March 16, 2006 rolled around a little over a week later, the City had paid Motona-

ga $140.34,[7] in partial fulfillment of the Arbitration Decision.

On April 26, 2006, the UPW's attorney, Herbert R. Takahashi (Takahashi), wrote a letter to the City's attorney, Paul K.W. Au (Au), reminding Au that under the Arbitration Decision, Motonaga was to have been paid various amounts within sixty days from the date of the award.[8] The letter closed with the following paragraph:

> I have been informed by the business agent that no payment has been made to date to [Motonaga] per the arbitration decision and award. In fact he will not be paid until the May 15, 2006 payroll. This is well beyond the "60 days from January 13, 2006." Accordingly, I am requesting that the [C]ity pay 10 percent interest on the judgment.

On April 28, 2006, the City paid Motonaga the remaining amounts owed under the Arbitration Decision and thereby fully satisfied its obligations under the Arbitration Decision. The City did not pay the additional interest that the UPW was demanding.

On June 5, 2006, the UPW filed its "Motion to Enforce Judgment and Payment of Interest and Attorney's Fees and Expenses" (Motion to Enforce). Although Motonaga had already been paid in full by the City, the UPW specifically requested "enforcement of a judgment entered on March 8, 2006 in the above entitled matter, and for payment of interest upon the judgment as well as reasonable attorney's fees and litigation expenses in accordance with Sections 478-2, [9] 478-3, [10] 636-16, and 658A-25, [HRS]." (Footnotes added.) In an affidavit attached to the Motion to Enforce, Takahashi declared in part:

7. The City's partial payment on March 3, 2006 was made pursuant to paragraph 3(d) of the Arbitration Decision, which mandated that the City reimburse Motonaga for his out-of-pocket expenses incurred in participating in substance abuse treatment.

8. In an affidavit in support of the UPW's Motion to Enforce executed on June 2, 2006, Takahashi attested that he also called Au on April 26, 2006 "about the non-compliance."

5. Under the terms of the [Arbitration Decision] (and judgment) the City was required to pay [Motonaga] back pay, and to otherwise make him whole for his losses within sixty (60) days of January 13, 2006, i.e., by March 16, 2006. See Exh. 7, paragraph 3. The City failed to comply with the award by March 16, 2006. On April 26, 2006 I notified counsel for the City of the non-compliance, and requested payment of 10% interest. *Exhibit 10* is a copy of the April 26, 2006 letter. I also spoke with [Au] on or after April 26, 2006 about the non-compliance. On June 1, 2006 I was notified by [Au] that the **City had declined our request to pay the 10% interest** on the judgment for the City's non-compliance by March 16, 2006.

6. Under the [RUAA] (chapter 658A), the circuit court has previously assessed attorney's fees and litigation expenses against public employers for failure to comply with the remedial terms of an arbitration award.

(Bolded emphasis added.) Takahashi attached as exhibits to his affidavit copies of court orders and judgments entered in other proceedings where either the City or the State of Hawai'i was ordered to pay costs and attorney's fees for failure to comply with the remedial terms of an arbitration award.

On June 30, 2006, the City filed its memorandum in opposition to the Motion to Enforce. The City initially pointed out that the Motion to Enforce was filed approximately six weeks after full payment had been made to Motonaga on April 28, 2006 (a delay in payment of forty-three days); the UPW was aware that Motonaga had received this payment; the UPW was further advised that if all the relief ordered by the Arbitration Decision was taken into account, the amount of

9. HRS § 478-2 (1993) provides, in relevant part, as follows:

> **Legal rate; computation.** When there is no express written contract fixing a different rate of interest, interest shall be allowed at the rate of ten per cent a year[.]

10. HRS § 478-3 (1993) states:

> **On judgment.** Interest at the rate of ten per cent a year, and no more, shall be allowed on any judgment recovered before any court in this State, in any civil suit.

the judgment (at Motonaga's hourly-wage rate of $18.90) equaled approximately $12,000.00; and the amount of interest on the $12,000.00 amount that was at issue equaled $141.37. The City also argued that the UPW's Motion to Enforce was moot even before the motion was filed; the UPW was not the real party in interest with respect to the request for payment of interest; and the UPW's request for attorney's fees and litigation expenses was legally unsupported and not authorized by HRS § 658A–25(c), which limited awards of reasonable attorney's fees and litigation expenses to "contested judicial proceedings under sections 658A–22, 658A–23 or 658A–24."

In an affidavit attached to the City's memorandum, Au took issue with Takahashi's assertion that the City declined the UPW's request to pay ten percent interest on the judgment:

3. Employer has never indicated to the Union that it was declining the request to pay statutory interest of ten percent on the March 8, 2006 judgment. To the contrary, Affiant advised counsel for the Union on or about June 1, 2006 that the former was in favor of paying the same and would be consulting with his client in order to determine the Employer's position regarding the interest request.

. . . .

6. Attached hereto as Exhibit B is a true and correct copy of a June 23, 2006 letter to [Takahashi].

7. Attached hereto as Exhibit C is a true and correct copy of a June 29, 2006 letter to [Takahashi].

Exhibit B was a letter from Au to Takahashi advising Takahashi that the City was willing to pay Motonaga statutory interest of ten percent on the judgment (amounting to $141.37) and requesting that the UPW withdraw its Motion to Enforce "rather than subject the parties and counsel to having to devote additional resources to this matter." Exhibit C was a letter from Au to Takahashi, which advised Takahashi that the City remained willing to pay Motonaga interest on the judgment but was "not willing to enter into a Stipulated Order as part of the resolution." The letter confirmed that the Motion to Enforce had already been complied with and that Motonaga had received payment pursuant to the Arbitration Decision on April 28, 2006.

In a supplemental affidavit executed on July 3, 2006 and attached to the UPW's reply brief in support of the Motion to Enforce, Takahashi related that he told Au on May 22, 2006 that "a motion would be filed unless the City accounted for what happened and paid the 10% interest." Takahashi also stated that he informed Au "that if a motion were needed there would be request [sic] for attorney's fees and expenses in addition to the 10% interest." According to Takahashi, Au claimed that he was not personally opposed to paying the interest but would have to consult with his client, the City. Takahashi declared that he asked Au "to get back to me quickly if he wanted to resolve the matter" and "Au promised to notify me of his client's decision." In the same supplemental affidavit, Takahashi declared:

c. On May 31, 2006, [Au] left a telephone message with my office indicating that he was still trying to find out if [Motonaga] was paid, and did not have authority from his client to pay the 10% interest.

d. Starting on May 31, 2006 and through June 2, 2006 I spent eighteen (18) hours preparing the union's motion to enforce judgment and payment of interest and attorney's fees and expenses which was lodged with the Court on June 2, 2006. The work consisted of (1) reviewing our case file and records to verify the chronology of events[,] (2) researching the applicable case law regarding pre-judgment and post judgment interest, (3) a telephone contact with [Motonaga] and the UPW's business agent, (4) Preparing the motion and memorandum in support thereof (consisting of approximately 14 pages).

3. On June 14, 2006 I contacted [Au] to request his consent to have the union business [sic] and [Motonaga] meet with a City representative to verify the back pay amount and the value of the 352 hours of sick leave Motonaga [sic] which was supposed to be restored. I told [Au] such a meeting was necessary because [Motonaga] wanted verification of all amounts due

and owing, and we needed to calculate the specific amount of the interest due. [Au] consented to the request, but again indicated he did not have authority to pay even the 10% interest request.

4. On June 22, 2006, I received a facsimile (dated June 19, 2006) of a transmittal received by the union business agent from Phillip Young indicating the back pay amounts, and indicating when the City gave Motonaga the credit for the 352 hours of sick leave due and owing. . . .

5. On June 23, 2006 I spoke with [Au] about this matter. He said the City was willing to pay the 10% interest to [Motonaga], but would *not* agree to pay unless the union withdrew its motion. I told [Au] we needed a stipulation and order to ensure compliance due to what happened previously in the case. I also asked whether he would agree to pay the attorney's fees and litigation expenses of the union to date. [Au] indicated the City would not. On June 24, 2006 I received in the mail a letter which is marked Exhibit B. On June 24, 2006 I responded to [Au's] letter dated June 24, 2006. *Exhibit 18* is a copy of the June 24, 2004 letter (which is being disclosed to the court because [Au] attached his letter dated June 23, 2006 as Exhibit B to his opposition memorandum).

6. On July 1, 2006 and July 3, 2006 I met with [Motonaga] to prepare a declaration. From July 1, 2006 through July 3, 2006 I spent sixteen (16) hours to prepare a reply brief in support of the motion to enforce judgment and payment of interest and attorney's fees, consisting of (1) preparation of the declaration of [Motonaga] and exhibits, (2) preparation of the affidavit of counsel, (3) legal research on mootness, real party in interest, law of the case doctrine, and (4) preparation of the reply brief (or memorandum).

. . . .

8. I have been one of the attorneys representing UPW from September 1970 to the present. My hourly rate as an attorney is $190 per hour.

9. While it is true that an appeal has been filed by the [City] from the order assessing attorney's fees in S.P. No. 06–1–0063 RKOL (see Exhibit 12), there has been no appeal filed from the orders granting attorney's fees in S.P. No. 06–1–0015 SSM (See Exhibit 11), S.P. No. 06–1–0110 SSM (See Exhibit 12). Therefore, the union relies on the law of the case doctrine regarding the question of whether attorney's fees and expenses should be assessed against an employer under Section 658A–25 in this case.

Exhibit 18 to Takahashi's supplemental exhibit was a letter from Takahashi to Au that responded to Au's June 23, 2006 letter to Takahashi. The letter stated:

The UPW respectfully declines your belated proposal to resolve the pending dispute in the above entitled case. We have never received an explanation why the City failed to pay Motonaga within 60 days as required. Moreover we wrote to you on April 26, 2006 requesting payment of the 10% interest. We called you on June 1, 2006 and your client declined to pay the interest. As a consequence a motion was filed on June 5, 2006.

As a counter proposal the UPW proposes that the City pay 10% interest to Motonaga, and attorney's fees of 18 hours × $190 to the UPW for litigation expenses to date. A stipulated order must be filed as part of the resolution.

Please advise by June 27, 2006 whether our counter-proposal is accepted. If not accepted by noon on June 27, 2006 the counter is withdrawn. . . .

A hearing on the Motion to Enforce was held before the circuit court on July 10, 2006. After hearing arguments on the motion, the circuit court orally ruled, in relevant part, as follows:

I think what the Court is inclined to do is grant the motion in part and deny the motion in part as follows: The Court believes that the—well, understands that the underlying payment of the $7,000–plus figure was paid but that—and that benefits were reinstated but that the amounts paid were not paid in a timely fashion. And therefore, the Court does believe that prejudgment interest from the date of March 16, 2006, and after the date of the judgment, post-judgment interest should ac-

crue as well until the date payment is made.

With respect to attorney's fees, the Court is unable to conclude that 658A–25 authorizes an award of attorney's fees because 658A–25 Subsection C is very specific regarding when attorney's fees are awardable. And if you contrast that language with the language of Subsection B immediately above it, the statute does allow costs to be awarded on the motion and subsequent judicial proceedings, but that Subsection B limits the award to costs. And the attorney's fees provision in Subsection C simply does not, to this—to this Court's way of thinking, expand the awardable costs to include attorney's fees under the circumstances of this matter.

So, the Court will award any costs associated and incurred with this motion but respectfully deny the request for attorney's fees. And the Court does recognize that intellectually, it does appear that when proceedings in arbitration become contested with respect to confirmation, vacating awards, and modifying awards that the legislature authorized attorney's fees to be collected, but under the American rule, this Court is unable to read the statute expansively enough to apply to all contested judicial proceedings dealing with arbitrations under Chapter 658A. So, the Court respectfully is inclined to deny the request for attorney's fees.

On August 7, 2006, the circuit court entered an "Order Granting in Part and Denying in Part Motion to Enforce Judgment and Payment of Interest and Attorney's Fees and Expenses, Filed on 6/5/06" (August 7, 2006 Order). The August 7, 2006 Order awarded the UPW $161.27 in pre-judgment and post-judgment interest and $135.00 in costs, but denied the UPW any attorney's fees.

The UPW filed its notice of appeal on August 17, 2006.

## DISCUSSION

The UPW contends that the circuit court "clearly erred when it determined that [HRS

§ 658A–25(c) ] 'is silent as to enforcement' and does not authorize attorney's fees to be awarded against a non-compliant party on a contested motion to enforce." For the following reasons, we disagree with the UPW.

### A.

■ "Generally, under the 'American Rule,' each party is responsible for paying for his or her own litigation expenses. An exception exists to the 'American Rule' in which attorney's fees may be awarded to the prevailing party where such an award is provided for by statute, stipulation, or agreement." *Ranger Ins. Co. v. Hinshaw*, 103 Hawai'i 26, 31, 79 P.3d 119, 124 (2003) (citation and some quotation marks omitted). The UPW contends that HRS § 658A–25(c) specifically authorizes a court to award to a prevailing party reasonable attorney's fees incurred in a judicial proceeding to enforce a judgment entered under HRS § 658A–25(a).

■ HRS § 658A–25 (Supp.2007) provides currently, as it did when the proceedings below took place, as follows:

**Judgment on award; attorney's fees and litigation expenses.** (a) Upon granting an order confirming, vacating without directing a rehearing, modifying, or correcting an award, the court shall enter a judgment in conformity therewith. The judgment may be recorded, docketed, and enforced as any other judgment in a civil action.

(b) A court may allow reasonable costs of the motion and subsequent judicial proceedings.

(c) On application of a prevailing party to a *contested judicial proceeding under section 658A–22, 658A–23, or 658A–24*, the court may add reasonable attorney's fees and other reasonable expenses of litigation incurred in a judicial proceeding after the award is made to a judgment confirming, vacating without directing a rehearing, modifying, or correcting an award.

(Emphasis added.) HRS § 658A–22 [11] relates to the confirmation of an arbitration case, as follows:

---

**11.** HRS § 658A–22 (Supp.2007) currently provides, as it did during all times relevant to this

award, HRS § 658A-23[12] concerns the vacating of an arbitration award, and HRS § 658A-24[13] relates to the modification or correction of an arbitration award. Under the plain language of HRS § 658A-25(c), therefore, reasonable attorney's fees may only be awarded to a party who prevails in a contested judicial proceeding to confirm, vacate, modify, or correct an arbitration award. There is no provision in HRS § 658A-25(c) that expressly authorizes an award of reasonable attorney's fees to a party who prevails in

a contested judicial proceeding on a motion to enforce a judgment confirming an arbitration award.

■ As the circuit court observed, the plain language of HRS § 658A-25(b), relating to an award of costs, stands in sharp contrast to HRS § 658A-25(c), relating to an award of attorney's fees. Subsection (b) specifically provides that a "court may allow reasonable costs of the motion [to confirm, vacate, modify, or correct] *and subsequent*

**Confirmation of award.** After a party to an arbitration proceeding receives notice of an award, the party may make a motion to the court for an order confirming the award at which time the court shall issue a confirming order unless the award is modified or corrected pursuant to section 658A-20 or 658A-24 or is vacated pursuant to section 658A-23.

12. HRS § 658A-23 (Supp.2007) states now, as it did during all times relevant to this case, as follows:

**Vacating award.** (a) Upon motion to the court by a party to an arbitration proceeding, the court shall vacate an award made in the arbitration proceeding if:
(1) The award was procured by corruption, fraud, or other undue means;
(2) There was:
(A) Evident partiality by an arbitrator appointed as a neutral arbitrator;
(B) Corruption by an arbitrator; or
(C) Misconduct by an arbitrator prejudicing the rights of a party to the arbitration proceeding;
(3) An arbitrator refused to postpone the hearing upon showing of sufficient cause for postponement, refused to consider evidence material to the controversy, or otherwise conducted the hearing contrary to section 658A-15, so as to prejudice substantially the rights of a party to the arbitration proceeding;
(4) An arbitrator exceeded the arbitrator's powers;
(5) There was no agreement to arbitrate, unless the person participated in the arbitration proceeding without raising the objection under section 658A-15(c) not later than the beginning of the arbitration hearing; or
(6) The arbitration was conducted without proper notice of the initiation of an arbitration as required in section 658A-9 so as to prejudice substantially the rights of a party to the arbitration proceeding.
(b) A motion under this section shall be filed within ninety days after the movant receives notice of the award pursuant to section 658A-19 or within ninety days after the movant receives notice of a modified or corrected award pursuant to section 658A-20, unless the movant alleges that the award was procured by

corruption, fraud, or other undue means, in which case the motion shall be made within ninety days after the ground is known or by the exercise of reasonable care would have been known by the movant.
(c) If the court vacates an award on a ground other than that set forth in subsection (a)(5), it may order a rehearing. If the award is vacated on a ground stated in subsection (a)(1) or (2), the rehearing shall be before a new arbitrator. If the award is vacated on a ground stated in subsection (a)(3), (4), or (6), the rehearing may be before the arbitrator who made the award or the arbitrator's successor. The arbitrator shall render the decision in the rehearing within the same time as that provided in section 658A-19(b) for an award.
(d) If the court denies a motion to vacate an award, it shall confirm the award unless a motion to modify or correct the award is pending.

13. HRS § 658A-24 (Supp.2007) currently provides, as it did during all times relevant to this case:

**Modification or correction of award.** (a) Upon motion made within ninety days after the movant receives notice of the award pursuant to section 658A-19 or within ninety days after the movant receives notice of a modified or corrected award pursuant to section 658A-20, the court shall modify or correct the award if:
(1) There was an evident mathematical miscalculation or an evident mistake in the description of a person, thing, or property referred to in the award;
(2) The arbitrator has made an award on a claim not submitted to the arbitrator and the award may be corrected without affecting the merits of the decision upon the claims submitted; or
(3) The award is imperfect in a matter of form not affecting the merits of the decision on the claims submitted.
(b) If a motion made under subsection (a) is granted, the court shall modify or correct and confirm the award as modified or corrected. Otherwise, unless a motion to vacate is pending, the court shall confirm the award.
(c) A motion to modify or correct an award pursuant to this section may be joined with a motion to vacate the award.

*judicial proceedings.*" (Emphasis added.) Costs are therefore expressly awardable for subsequent judicial proceedings, such as a post-judgment motion to enforce a judgment confirming an arbitration award. In contrast, subsection (c) does not mention subsequent judicial proceedings and expressly limits the award of attorney's fees to "a prevailing party to a contested judicial proceeding under [HRS §§ ]658A–22, 658A–23, or 658A–24[.]"

### B.

HRS chapter 658A is based on the Uniform Arbitration Act (2000) (RUAA), which was approved by the National Conference of Commissioners on Uniform State Laws (NCCUSL) in 2000 and revised the Uniform Arbitration Act (UAA) that had been adopted in 1955. *Unif. Arbitration Act* (2000), 7 U.L.A. 1 (2005). The Prefatory Note to the RUAA explains what prompted the NCCUSL to promulgate the RUAA and recommend its adoption by the states:

> The [UAA], promulgated in 1955, has been one of the most successful Acts of the [NCCUSL]. Forty-nine jurisdictions have arbitration statutes; 35 of these have adopted the UAA and 14 have adopted substantially similar legislation. A primary purpose of the 1955 Act was to insure the enforceability of agreements to arbitrate in the face of oftentimes hostile state law. That goal has been accomplished. Today arbitration is a primary mechanism favored by courts and parties to resolve disputes in many areas of the law. This growth in arbitration caused the Conference to appoint a Drafting Committee to consider revising the Act in light of the increasing use of arbitration, the greater complexity of many disputes resolved by arbitration, and the developments of the law in this area.
>
> *The UAA did not address many issues which arise in modern arbitration cases.* The statute provided no guidance as to (1) who decides the arbitrability of a dispute and by what criteria; (2) whether a court or arbitrators may issue provisional remedies; ... (10) what remedies an arbitrator may award, especially in regard to attorney's fees, punitive damages or other exemplary relief; ... (12) *when a court can award attorney's fees and costs to a prevailing party in an appeal of an arbitrator's award;* ... The [RUAA] examines all of these issues and provides state legislatures with a more up-to-date statute to resolve disputes through arbitration.
>
> There are a number of principles that the Drafting Committee agreed upon at the outset of its consideration of a revision to the UAA. First, arbitration is a consensual process in which autonomy of the parties who enter into arbitration agreements should be given primary consideration, so long as their agreements conform to notions of fundamental fairness.... *Second, the underlying reason many parties choose arbitration is the relative speed, lower cost, and greater efficiency of the process.* The law should take these factors, where applicable, into account.... *Finally, in most cases parties intend the decisions of arbitrators to be final with minimal court involvement unless there is clear unfairness or a denial of justice.* This contractual nature of arbitration means that the provision to vacate awards in Section 23 is limited. This is so even where an arbitrator may award attorney's fees, punitive damages or other exemplary relief under Section 21.

*Id.* Prefatory Note, 7 U.L.A. 2–3 (emphases added).

HRS § 658A–25 is almost identical to section 25 of the RUAA. The *Comments to RUAA § 25(c)* confirm that the authority to award reasonable attorney's fees was intended by the framers of the RUAA to be limited:

> (3) *Section 25(c) promotes the statutory policy of finality of arbitration awards by adding a provision for recovery of reasonable attorney's fees and reasonable expenses of litigation to prevailing parties in contested judicial actions to confirm, vacate, modify or correct an award. Potential liability for the opposing parties' post-award litigation expenditures will tend to discourage all but the most meritorious of challenges of arbitration awards.* If a party prevails in a contested judicial proceeding over an arbitration award, Section 25(c) allows the court discretion to award attorney's fees and litigation expenses....

(4) *The right to recover post-award litigation expenses does not apply if a party's resistance to the award is entirely passive but only where there is* "*a contested judicial proceeding.*" The situation of an uncontested judicial proceeding, *e.g.*, to confirm an arbitration award, will most often occur when a party simply cannot pay an amount awarded. *If a party lacks the ability to comply with the award and does not resist a motion to confirm the award, the subsection does not impose further liability for the prevailing party's fees and expenses. These expenditures should be nominal in a situation in which a motion to confirm is made but not opposed. This is consistent with the general policy of most States, which does not allow a prevailing party to recover legal fees and most expenses associated with executing a judgment.* [14]

*Id.* § 25 cmt. 3–4, 7 U.L.A. 86 (emphases and footnote added).

### C.

The UPW contends that the circuit court's denial of its motion for attorney's fees sub-

verts the principle underlying the RUAA that potential liability for the award of attorney's fees will tend to discourage challenges to arbitration awards. Specifically, the UPW argues that "the purpose of arbitration is defeated when no fees are assessed for 'unjustified' non-compliance with an award."

The UPW brought its Motion to Enforce in order to recover $161.27 in pre-judgment and post-judgment interest from the City. In a Supplemental Affidavit executed on July 3, 2006, Takahashi stated that he had spent eighteen hours from May 31 through June 2, 2006 and sixteen hours from July 1 through 3, 2006 on legal work connected with the Motion to Enforce and that his hourly rate was $190.00 per hour. The UPW thus had incurred $6,460.00 in attorney's fees on Motonaga's behalf as of July 3, 2006, over forty times the amount in controversy.

As discussed above, the Comment to RUAA § 25(c) specifically noted that "the general policy of most [s]tates ... does not allow a prevailing party to recover legal fees and most expenses associated with executing a judgment." *Id.* § 25 cmt. 4, 7 U.L.A. 86.

---

**14.** In Hawai'i, a statute exists that vests discretion in a court to award a prevailing party reasonable attorney's fees associated with executing a judgment. Specifically, HRS § 607–14.7 (1993) provides:

> **Attorney's fees, costs, and expenses; judgment creditors.** In addition to any other attorney's fees, costs, and expenses which may or are required to be awarded, and notwithstanding any law to the contrary, the court in any civil action may award to a judgment creditor, from a judgment debtor, reasonable attorney's fees, costs, and expenses incurred by the judgment creditor in obtaining or attempting to obtain satisfaction of a money judgment, whether by execution, examination of judgment debtor, garnishment, or otherwise. The court may award attorney's fees which it determines is reasonable, but shall not award fees in excess of the following schedule:
>
> 25 per cent on first $1,000 or fraction thereof.
>
> 20 per cent on second $1,000 or fraction thereof.
>
> 15 per cent on third $1,000 or fraction thereof.
>
> 10 percent on fourth $1,000 or fraction thereof.
>
> 5 per cent on fifth $1,000 or fraction thereof.
>
> 2.5 per cent on any amount in excess of $5,000.

> The above fees shall be assessed on the amount of judgment, exclusive of costs and all other attorney's fees.

HRS § 607–14.7 was enacted pursuant to Act 288, 1985 Haw. Sess. L. 629. In section 1 of Act 288, the legislature expressed its purpose in enacting the act as follows:

> The purpose of this Act is to allow judgment creditors to recover attorney's fees, costs, and expenses incurred in obtaining or attempting to obtain satisfaction of money judgments. Where a judgment debtor fails to voluntarily satisfy the judgment, the judgment creditor must incur further expenses to satisfy the judgment. Recovery of the additional expenses is currently not provided for by law. It is unfair to the judgment creditor, having already made a costly investment in time and expense in obtaining a judgment, to incur unrecoverable additional expenses, because of the judgment debtor's inaction.

1985 Haw. Sess. L. at 629. The record in this case indicates that by the time the UPW filed its Motion to Enforce, the City had satisfied the judgment and the UPW was seeking interest at the statutory rate for the City's belated payment. Therefore, HRS § 607–14.7 did not apply to the facts of this case.

Additionally, the principles underlying the RUAA include minimizing court involvement once an arbitration award is finalized and promoting the relative speed, lower cost, and greater efficiency of the arbitration process. *Id.* Prefatory Note, 7 U.L.A. 3.

We fail to see how the principles underlying the RUAA were subverted by the circuit court's order.

## CONCLUSION

In light of the foregoing discussion, we affirm the August 7, 2006 Order.

