**Electronically Filed
Supreme Court
SCWC-14-0000970
13-APR-2017
07:53 AM**

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---oOo---

_____

RT IMPORT, INC., Respondent/Plaintiff-Appellee,

vs.

JESUS TORRES and MILA TORRES dba HAWAIIAN QUILT WHOLESALE,
Petitioners/Defendants-Appellants,

and

WORLDWIDE FLIGHT SERVICES, INC., Defendant.
_____

SCWC-14-0000970

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-14-0000970; CIV. NO. 12-1-1890)

APRIL 13, 2017

RECKTENWALD, C.J., NAKAYAMA, McKENNA, POLLACK, AND WILSON, JJ.

OPINION OF THE COURT BY McKENNA, J.

## I.   Introduction

Jesus and Mila Torres dba Hawaiian Quilt Wholesale ("the Torreses") appeal an arbitration award between them and RT Import, Inc. ("RT Import"), raising four questions, of which

only the first, relating to the circuit court's award of fees and costs, has merit.  We hold that the circuit court erred by including in its judgment $4,738.74 that was not included in the final arbitration award or otherwise allowed by law.

## II.  Background

## A.    Court Proceedings Prior to Arbitration

On May 24, 2012, RT Import filed a complaint in the District Court of the First Circuit against both the Torreses and Worldwide Flight Services ("WFS") seeking $25,000 in damages for merchandise allegedly misdelivered by WFS to the Torreses, which was then converted by the Torreses.  The Torreses answered the complaint and filed a cross-claim against WFS, seeking indemnification and/or contribution in the event they were found liable to RT Import.  The Torreses also filed a demand for jury trial, and the case was then transferred to the circuit court.[1]

After discovery, RT Import filed a petition to approve a confidential good faith settlement with WFS pursuant to Hawai'i Revised Statutes ("HRS") § 663-15.5 (Supp. 2012).  After the Torreses withdrew their objection, the settlement between RT Import and WFS was approved by the circuit court.

A few weeks before the scheduled trial date, after additional pre-trial proceedings and discovery, RT Import and

---

[1]    The Honorable Edwin C. Nacino presided.

2

the Torreses agreed to resolve their dispute through binding arbitration under the auspices of Dispute Prevention and Resolution, Inc. ("DPR"), and they filed a stipulation for binding arbitration.

## B.    Arbitration Proceedings

The following facts were adduced in arbitration.  Although the Torreses were to receive forty boxes of merchandise, WFS mistakenly delivered eighty-eight boxes.  The mistaken delivery contained eighteen boxes belonging to RT Import, thirty-six belonging to the Torreses, and thirty-four boxes belonging to another company.  The Torreses returned the thirty-four boxes belonging to the other company, but they never acknowledged receiving merchandise belonging to RT Import.

The arbitrator ruled that although WFS's misdelivery led to the Torreses' initial receipt and possession of RT Import's merchandise, the Torreses' subsequent actions, including removing RT Import's box labels and selling the merchandise at the Aloha Stadium Swap Meet, proved that they committed the intentional tort of conversion.  The Final Award of Arbitrator ("final award") awarded RT Import a total of $106,711.62, with subtotals of $71,663.33 for special damages and $35,000.00 for

general damages for emotional distress.[2]  The arbitrator

specifically found:

> 29.  As the prevailing party, RT is entitled to the fair market value of the chattel, in addition to any special damages, including compensation for the time and money properly expended in pursuit of the property, plus emotional distress.
> 30.  The undisputed evidence adduced establishes that the fair market retail value of the merchandise [sic] $62,047.00.
> 31.  The undisputed evidence adduced from RT establishes the following costs related to this converted merchandise: freight charges of $2,777.53, customs entry services of $1,128.80, airport fees of $35.00, business related airline travel of $2,175.00, incidental travel expenses of $3,500.00.[3]  All other claims of expenses are denied.
> 32.  RT is also entitled to an award of damages for emotional distress.
> 33.  RT is entitled to be awarded its arbitration costs and expenses.
> 34.  In light of the fact that the claims asserted by RT are tort claims, RT is not entitled to an award of attorney's fees and costs.

The arbitrator also ordered:

> The Respondents are responsible for 100% of the arbitration fees and costs.  The Claimant is therefore awarded, and the Respondents shall reimburse to the Claimant directly, all arbitration related fees and costs paid by the Claimant to DPR, and shall pay said fees and costs as directed by Dispute Prevention & Resolution, Inc.

---

[2]     RT Import is a corporation.  We are unaware of any legal authority that permits an award of emotional distress damages to a corporation.  Numerous reported cases preclude emotional distress damages in favor of corporations.  See, e.g., F.D.I.C. v. Hulsey, 22 F.3d 1472, 1489 (10th Cir. 1994)(applying Oklahoma law); Interphase Garment Sol., LLC v. Fox Television Stations, Inc., 566 F. Supp.2d 460, 466 (D. Md. 2008)(applying Maryland law); Earth Scientists (Petro Serv.) Ltd. v. U.S. Fidelity & Guar. Co., 619 F. Supp. 1465, 1474 (D. Kansas 1985)(applying Kansas law); Wilson v. Colonial Penn Life Ins. Co., 454 F. Supp. 1208, 1212, n.9 (D. Minn. 1978)(applying Minnesota law).  The emotional distress award was not challenged or appealed, but, in any event, parties who submit their claims to binding arbitration assume all the hazards of the arbitration process, including the risk that the arbitrators may make mistakes in the application of law and in their findings of fact.  Nordic PCL Constr., Inc. v. LPIHGC, LLC, 136 Hawaiʻi 29, 41, 358 P.3d 1, 14 (2015).

[3]     The amounts in paragraphs 30 and 31 total $71,663.33 in special damages.

4

(Emphasis added.)  Pursuant to this portion of the final award, DPR sent RT Import a final invoice ("DPR invoice"), directing the Torreses to immediately remit $3,616.75 to RT Import (via their attorney) as reimbursement for arbitration fees.  This amount was to reimburse RT Import for its advance toward the arbitrator's fees.

Several weeks after DPR issued its invoice, however, RT Import sent a letter directly to the Torreses stating, "As agreed by the parties and ordered by the Arbitrator, below please find for your review and payment, the fees and costs of this Arbitration matter.  All supporting invoices in regard to costs are enclosed . . . $8,355.49."  ("RT Import invoice")  The RT Import invoice listed the following costs:

> DPR Order/letter: $3,616.75
> Postage, Photocopying Costs: $2,278.29
> Deposition transcript of J. Torres, M. Torres, C. Murata: $2,244.75
> Services of process regarding depositions: $215.70

These amounts total $8,355.49.  When the $3,616.75 in arbitration fees reflected in the DPR invoice is subtracted, the difference is $4,738.74.

## C.    Further Circuit Court Proceedings

Although they had stipulated to submit this case to binding arbitration, the Torreses filed a Notice of Appeal and Request for Trial De Novo of the final award, citing Rule 22 of the Hawai'i Arbitration Rules.  On the same day, the Torreses also

filed a motion with DPR to set aside the final award. The Torreses alleged that RT Import had been made whole through the confidential settlement, rendering the case moot, and that the arbitrator lacked subject matter and personal jurisdiction.

RT Import opposed this motion before DPR, arguing that the jurisdictional arguments were meritless, that the parties had stipulated to binding arbitration, and that RT Import had not been made whole by its settlement with WFS. DPR responded that it had no authority under HRS § 658A or DPR's Arbitration Rules to rule on the motion.

RT Import then filed a motion in the circuit court to confirm the final award pursuant to HRS § 658A-22. RT Import requested that judgment be entered in its favor in the amount of $106,663.33, plus $8,355.49 in costs paid for postage, photocopying, deposition transcripts, and service of process costs related to the arbitration as well as $1,692.80 for attorney's fees incurred in bringing the motion. RT Import included both the DPR invoice and RT Import invoice in its motion to confirm.

The Torreses incorporated the arguments contained in their motion with DPR in their opposition memorandum to RT Import's circuit court motion to confirm. The Torreses did not file a motion to vacate or modify the award with the circuit court.

The circuit court granted RT Import's motion to confirm the final award and entered a judgment awarding RT Import a total of $116,759.91, comprised of $106,711.62 for damages, $8,355.49 for "Plaintiff's Arbitration attorney's fees and costs," and $1,692.80 for "Plaintiff's Costs of Motion for an Order to Confirm Final Award of Arbitrator Dated April 2, 2014."

**D.  Appeal to the Intermediate Court of Appeals ("ICA")**

On appeal to the ICA, the Torreses asserted that the circuit court abused its discretion by: (1) concluding that they were not entitled to a trial de novo on the grounds that this case was not in the Court-Annexed Arbitration Program; (2) awarding attorney's fees and costs to RT Import despite the arbitrator's ruling that attorney's fees were not available for this tort matter; and (3) granting the motion to confirm the final award without confirming whether the arbitrator had subject matter and personal jurisdiction.  The Torreses also alleged that DPR's arbitration administrator abused its discretion by refusing to hear and decide their motion to set aside the final award pursuant to the Hawaiʻi Arbitration Rules.[4]

In a summary disposition order, the ICA determined that the Torreses' appeal was without merit.  RT Imp., Inc. v. Torres, No. CAAP-14-0000970, 2016 WL 6125676, at *1 (Haw. Ct. App. Oct.

---

[4]  DPR's arbitration administrator, which is a court-annexed, non-binding arbitration alternative dispute resolution process, has no connection to the Hawaiʻi Arbitration Rules.

7

20, 2016). The ICA resolved the Torreses' points on appeal as follows:

> (1) when the circuit court heard RT Import's Motion to Confirm Award, Appellants did not raise HRS chapter 658A as a basis for challenging the arbitration award;
> (2) the DPR case manager had no authority to consider or rule on the Appellants' Motion to Set Aside under HRS chapter 658A; and
> (3) this case was never part of the Court-Annexed Arbitration Program or subject to the rules of the program, but instead was conducted pursuant to HRS chapter 658A.

The ICA therefore affirmed the circuit court's confirmation of the final arbitration award and judgment.

## E.   Application for Writ of Certiorari

The Torreses raise the following four questions on certiorari:

> 1. Whether the ICA gravely erred in concluding that the circuit court properly awarded attorney's fees in an arbitration case where the awarding of attorney's fees was precluded by the arbitrator pursuant to the American rule and where no language in the arbitration agreement permitted the awarding of attorney's fees?
>
> 2. Whether the ICA gravely erred in concluding an arbitration case may proceed to trial and a verdict may be obtained, even where the facts show that prior to the commencement of the arbitration trial, the injured party was made whole prior to the commencement of that trial?
>
> 3. Whether the ICA gravely erred in affirming the award of an arbitration award of $106,711.62, where Plaintiff only sought $15,800 in damages?
>
> 4. Whether the ICA gravely erred in concluding that measure of damages in case [sic] tort case involving the tort of conversion is the value of the chattel at the time of the judgment?

### III. Standards of Review

## A.   Review of an arbitration award

> Where a party challenges an arbitration award, the following precepts are applicable. First, because of the legislative policy to encourage arbitration and thereby

8

discourage litigation, arbitrators have broad discretion in resolving the dispute.  Upon submission of an issue, the arbitrator has authority to determine the entire question, including the legal construction of terms of a contract or lease, as well as the disputed facts.  In fact, where the parties agree to arbitrate, they thereby assume all the hazards of the arbitration process, including the risk that the arbitrators may make mistakes in the application of law and in their findings of fact.

Second, correlatively, judicial review of an arbitration award is confined to the strictest possible limits.  An arbitration award may be vacated only on the four grounds specified in HRS § 658-9 and modified and corrected only on the three grounds specified in HRS § 658-10.  Moreover, the courts have no business weighing the merits of the award.

Third, HRS §§ 658-9 and -10 also restrict the authority of appellate courts to review judgments entered by circuit courts confirming or vacating the arbitration awards.

.  .  .  .

The promulgation of HRS chapter 658A has not materially changed this standard of review.  Judicial review of arbitration awards remains limited to the statutory grounds for confirmation, vacatur, modification, and correction.

Nordic PCL Constr., Inc., 136 Hawaiʻi at 41-42, 358 P.3d at 13-14.

## B.    Statutory interpretation

Statutory interpretation is a question of law reviewable de novo.  Our construction of statutes is guided by the following rules:

First, the fundamental starting point for statutory-interpretation is the language of the statute itself.  Second, where the statutory language is plain and unambiguous, our sole duty is to give effect to its plain and obvious meaning.  Third, implicit in the task of statutory construction is our foremost obligation to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself.  Fourth, when there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an ambiguity exists.

Panado v. Bd. of Trs., Emps.' Ret. Sys., 134 Hawai'i 1, 10-11, 332 P.3d 144, 153-54 (2014) (internal quotation marks and citations removed).

### IV. Discussion

**A.  The circuit court erred by including in its judgment $4,738.74 not included in the arbitration award and not allowable under HRS § 658A-25.**

In their first question on certiorari, the Torreses challenge the circuit court's award of "attorney's fees" as part of the judgment, alleging that such fees were not authorized by the arbitrator.

HRS § 658A-25 (Supp. 2012) "Judgment on award; attorney's fees and litigation expenses" provides:

> (a)  Upon granting an order confirming, vacating without directing a rehearing, modifying, or correcting an award, the court shall enter a judgment in conformity therewith.  The judgment may be recorded, docketed, and enforced as any other judgment in a civil action.
>
> (b)  A court may allow reasonable costs of the motion and subsequent judicial proceedings.
>
> (c)  On application of a prevailing party to a contested judicial proceeding under section 658A-22, 658A-23, or 658A-24, the court may add reasonable attorney's fees and other reasonable expenses of litigation incurred in a judicial proceeding after the award is made to a judgment confirming, vacating without directing a rehearing, modifying, or correcting an award.

HRS § 658A-25.  There were two amounts in the judgment characterized as "attorney's fees," both of which have been challenged by the Torreses in the circuit court and on appeal. These amounts are the $1,692.80 award characterized by the circuit court as "Plaintiff's Costs of Motion" and the $8,355.49

10

award characterized by the circuit court as "Plaintiff's Arbitration attorney's fees and costs."

### 1. The $1,692.80 award was properly included in the circuit court judgment pursuant to HRS § 658-23(c).

The circuit court characterized the $1,692.80 in attorney's fees incurred by RT Import in the judicial proceedings to confirm the final award as "Plaintiff's Costs of Motion," which appear to correspond to amounts allowed under HRS § 658A-25(b) (Supp. 2012). The amounts were for attorney's fees in bringing the motion to confirm the final award under HRS § 658A-22 (Supp. 2012). Pursuant to the language of the statute, the amounts are therefore governed by HRS § 658A-25(c).

Although the $1,692.80 was mischaracterized, HRS § 658A-25(c) allows a court to award attorney's fees incurred in judicial proceedings to confirm an arbitration award when a motion to confirm award under HRS § 658A-22 is contested. See In re Arbitration Between United Pub. Workers, AFSCME, Local 646, AFL-CIO and City and Cty. of Honolulu, 119 Hawaiʻi 201, 209, 194 P.3d 1163, 1171 (App. 2008) (noting that attorney's fees on a motion to confirm award are only allowable to a prevailing party to a contested judicial proceeding under HRS §§ 658A-22, 658A-23, or 658A-24).

In this case, the Torreses contested RT Import's HRS § 658A-22 judicial proceedings to confirm the award.

11

Therefore, the circuit court's judgment properly included the amount of $1,692.80, as it was awarded pursuant to HRS § 658A-25(c) for attorney's fees incurred in the judicial proceeding regarding the contested award.

2. **The circuit court was without authority to include in its judgment $4,738.74 of the $8,355.49 award characterized as arbitration attorneys' fees and costs because that amount was not included in the arbitration award.**

With respect to the $8,355.49 award characterized by the circuit court as arbitration attorneys' fees and costs, this amount included the: (1) $3,616.75 for arbitrator's fees in the DPR invoice, and (2) additional amounts totalling $4,738.74 in the RT Import invoice, which consisted of $2,278.29 in postage and photocopying costs, $2,244.75 for deposition transcripts, and $215.70 for service of process costs for depositions.

The arbitrator's final award, however, stated as follows:

> The Respondents are responsible for 100% of the arbitration fees and costs. The Claimant is therefore awarded, and the Respondents shall reimburse to the Claimant directly, all arbitration related fees and costs paid by the Claimant to DPR, and shall pay said fees and costs <u>as directed by Dispute Prevention & Resolution, Inc.</u>

(Emphasis added.) The DPR invoice, issued pursuant to the final award, directed the Torreses to pay $3,616.75 for the arbitrator's fees. Although the separate RT Import invoice asserted that the parties had agreed to the additional amounts, the Torreses object to these amounts characterized as

12

arbitration attorney's fees throughout these judicial proceedings.

Whether the circuit court could include the extra $4,738.74 not "directed by DPR" to be paid by the Torreses to RT Import is an issue of statutory interpretation.  The plain language of HRS § 658A-22 authorizes the circuit court to confirm "the award."[5] The "award" includes the $3,616.75 as "directed by DPR," but not the additional $4,738.74 separately invoiced directly by RT Import to the Torreses.  Therefore, the circuit court erred by including in its judgment the $4,738.74, which was not part of the arbitration award.

**B.    Based on the deference given to arbitration awards, the court did not err in confirming the remainder of the final arbitration award in its entirety.**

In the second, third, and fourth questions raised on certiorari, the Torreses allege that the arbitrator erred by awarding damages because RT Imports had been made whole by its settlement with WFS, by awarding damages that exceeded the $15,800 purportedly originally sought by RT Imports, and by applying an incorrect measure of damages.  In Section III(A)

---

[5]    HRS § 658A-22 provides:

> **Confirmation of award.**  After a party to an arbitration proceeding receives notice of an award, the party may make a motion to the court for an order confirming the award at which time the court shall issue a confirming order unless the award is modified or corrected pursuant to section 658A-20 or 658A-24 or is vacated pursuant to section 658A-23.

13

above, we outlined the standards governing judicial review of an arbitration award, including:

> because of the legislative policy to encourage arbitration and thereby discourage litigation, arbitrators have broad discretion in resolving the dispute. Upon submission of an issue, the arbitrator has authority to determine the entire question, including the legal construction of terms of a contract or lease, as well as the disputed facts. In fact, where the parties agree to arbitrate, they thereby assume all the hazards of the arbitration process, including the risk that the arbitrators may make mistakes in the application of law and in their findings of fact.
>
> Second, correlatively, judicial review of an arbitration award is confined to the strictest possible limits. . . . Moreover, the courts have no business weighing the merits of the award.

Nordic PCL Constr., Inc., 136 Hawai'i at 41, 358 P.3d at 13.

In addition, HRS § 658A-21(c)(Supp. 2012) specifically provides in relevant part:

> [A]n arbitrator may order such remedies as the arbitrator considers just and appropriate under the circumstances of the arbitration proceeding. The fact that such a remedy could not or would not be granted by the court is not a ground for refusing to confirm an award under section 658A-22 . . . .

Accordingly, pursuant to the standards governing judicial review of arbitration awards, the second, third, and fourth questions on certiorari are outside the scope of permitted judicial review.

### V. Conclusion

In this case, the circuit court erred by including in the judgment confirming the arbitration award $4,738.74 directly billed by RT Import to the Torreses, which was not a part of the final award. Accordingly, we otherwise affirm but vacate the

14

ICA's Judgment on Appeal and the circuit court's Judgment as to $4,738.74 of the $8,355.49 for "Plaintiff's Arbitration attorney's fees and costs," and remand this case to the circuit court for further proceedings consistent with this opinion.  In all other respects, the ICA's Judgment on Appeal is affirmed.

Barry L. Sooalo
for petitioner

Robert E. Badger
for respondent

/s/ Mark E. Recktenwald

/s/ Paula A. Nakayama

/s/ Sabrina S. McKenna

/s/ Richard W. Pollack

/s/ Michael D. Wilson

