**Electronically Filed
Supreme Court
SCWC-12-0000025
10-APR-2019
09:27 AM**

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---o0o---

GORAN PLEHO, LLC, a Hawai'i Limited Liability Company (dba
Resorts Limousine Services), GORAN PLEHO and ANA MARIA PLEHO,
Petitioners/Plaintiffs-Appellants/Cross-Appellees,

vs.

DAVID W. LACY, LACY AND JACKSON, LLLC,
a Hawai'i Limited Liability Law Company,
Respondents/Defendants-Appellees/Cross-Appellants,

and

DRAGAN RNIC, Respondent/Defendant-Appellee.

SCWC-12-0000025

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-12-0000025; CIVIL NO. 06-1-101K)

APRIL 10, 2019

RECKTENWALD, C.J., NAKAYAMA, McKENNA, POLLACK, AND WILSON, JJ.[1]

---

[1]    Chief Justice Recktenwald writes for the court, except with respect to Petitioners' unfair and deceptive trade practices claim.  With respect to that issue, Justice Pollack writes for the majority of the court and Chief Justice Recktenwald, with whom Justice Nakayama joins, respectfully dissents.

OPINION OF THE COURT BY RECKTENWALD, C.J.

## I.  INTRODUCTION

This case requires us to consider a series of rulings by the trial court in a complex commercial dispute involving the sale of a limousine service.  Goran and Ana Maria[2] Pleho purchased Resorts Limousine Services (RLS), a Kona-based business, from their acquaintance, Dragan Rnic, in 2005. David W. Lacy, Esq., of the firm Lacy & Jackson LLLC (collectively, "Lacy Parties"), represented Goran and Maria in the transaction.  At Lacy's recommendation, Goran and Maria formed a corporation, Goran Pleho, LLC (GPLLC), and the transaction was completed in GPLLC's name.  Goran and Maria discovered problems with the business several months after the purchase.  Goran and Maria, and GPLLC (collectively, "Pleho Parties"), brought the present action in the Circuit Court for the Third Circuit (circuit court)[3], alleging that Rnic and Lacy Parties intentionally misrepresented the value of RLS.

Pleho Parties asserted numerous claims against the defendants, including fraud and legal malpractice, and they asked the court to rescind or reform the sale of RLS and award compensatory and punitive damages.  Rnic counterclaimed for

---

[2]      In Petitioners' application for writ of certiorari, Ana Maria Pleho is referred to as Maria.  We adopt this naming convention throughout this opinion.

[3]      The Honorable Ronald Ibarra presided.

breach of contract and other counts related to Pleho Parties' failure to make payments on the purchase price, and cross-claimed against Lacy Parties.

After extensive pretrial motions and discovery, Rnic settled all claims with Lacy Parties and Pleho Parties. Additionally, the circuit court dismissed or granted summary judgment on most of Pleho Parties' claims against Lacy Parties prior to trial.

Meanwhile, Goran and Maria filed for bankruptcy in Nevada, which led to a stay of the action in the circuit court for eleven months. Lacy Parties filed a motion in limine requesting that Pleho Parties be barred from presenting any evidence regarding their assets that conflicted with Goran and Maria's submissions in the bankruptcy proceeding, which the circuit court denied.

At trial, the circuit court granted judgment as a matter of law (JMOL) against Pleho Parties on most remaining claims, and only their legal malpractice claim based on Lacy's representation of GPLLC went to the jury. The jury found Lacy Parties not liable by special verdict. The circuit court entered judgment against Pleho Parties on all counts, awarding attorney's fees and costs to Lacy Parties.

On appeal, the Intermediate Court of Appeals (ICA) partially vacated the circuit court's judgment, finding that the circuit court had erroneously dismissed or granted summary

3

judgment on Goran and Maria's claims as individuals for fraud, legal malpractice, and punitive damages. The ICA also vacated the circuit court's denial of the motion in limine, finding that Lacy Parties had demonstrated all of the elements of judicial estoppel. The ICA affirmed the circuit court's judgment in all other respects.

In their application for writ of certiorari, Pleho Parties argue that the ICA erred in failing to revive their remaining claims against Lacy Parties. These include claims by Goran and Maria, as individuals, for conspiracy to commit fraud, intentional infliction of emotional distress (IIED), negligent infliction of emotional distress (NIED), and unfair and deceptive trade practices (UDAP); and claims by GPLLC for fraud and punitive damages. Pleho Parties also argue that the ICA erred when it vacated the trial court's order denying Lacy Parties' motion in limine.

We conclude that the dismissal of Goran and Maria's claims for IIED and NIED was in error, as they stated colorable claims on both counts. We also conclude that the grant of JMOL on GPLLC's claims for fraud and punitive damages was in error. Viewing the evidence in the light most favorable to the non-moving party, a reasonable jury could have returned a verdict in favor of Pleho Parties on these counts. We also conclude that the ICA erred in vacating the trial court's order denying Lacy Parties' motion in limine.

4

Finally, a majority of this court concludes that the grant of summary judgment as to Goran and Maria Pleho's UDAP claim was in error.

We affirm the ICA on all remaining issues.

## II.  BACKGROUND

**A.   Sale of RLS**[4]

Before the sale of RLS to GPLLC, Rnic signed an agreement in June 2005 with a third individual, Don Rullo, to sell RLS for $800,000 in cash.  The sale did not close.  Rullo, a real estate agent, was a client of Lacy's who consulted with him about business matters frequently, and Lacy testified that he represented Rullo in this potential transaction.  Rnic testified that Rullo introduced him to Lacy.

Goran Pleho and Rnic met in Las Vegas in 2004, and Goran subsequently served as Rnic's realtor in a number of real estate purchases.  Rnic told Goran about his intention to sell RLS.  Goran testified that Rnic gave him financial documents detailing RLS's profits and losses; when Goran told Rnic that he did not understand the documents, Rnic said that they should consult "David Lacy, the best attorney on the island."  Goran and Maria met Lacy on July 11, 2005, where, according to Goran:

> Mr. Rnic introduced Mr. Lacy as his attorney, but he
> also introduced him as the best attorney on the
> island, and only he was the one capable of doing all
> the business transactions, very capable.  And at that

---

[4]     Unless otherwise indicated, the following facts are undisputed.

5

> point I said, "Well, okay. But that is your attorney, and if we are going to even consider this, I have to have my attorney to represent me." Rnic said, "Well, then I don't need an attorney, and Mr. Lacy can be your attorney." And Mr. Lacy said, "Well, I'm not sure I can do it. I got to think about it."

Lacy described his introduction to Goran as follows:

> Dragan Rnic was trying to sell his limousine company to Don Rullo. Don Rullo introduced Dragan Rnic to me. That fell through. And some, a week, five days, I forget what it was after that, Dragan brought Goran to my office. And I met him. And then they had all the terms and conditions of the deal that they had agreed to. And so I agreed to do the paperwork on behalf of Mr. Pleho as an LLC.
>
> . . . .
>
> [T]hey both came in and had agreed upon the terms and conditions of the sale, and I think I told 'em they needed lawyers. Mr. Rnic said he didn't, and I should just be Mr. Pleho's lawyer. And then after thinking about it and I guess I talked to [Lacy's partner] Kim [Jackson], I agreed to be his lawyer, if he wanted me to.

Lacy agreed to represent Goran in the transaction, and referred Goran to a certified public accountant (CPA) to obtain an appraisal of RLS. However, the CPA told Goran that he was not available to do the appraisal. Goran testified that he expressed concern about proceeding with the sale without an appraisal at his next meeting with Rnic and Lacy on July 19, 2005:

> So I said, "I can't go forward with this. I need an appraisal. I need to see what is this company's worth."
>
> And Mr. Rnic said, "Well, what do you mean? This is a unique company, only one of this kind. There's nobody to appraise this company. It's worth $2 million, and $1.5 is just a great price." And Mr. Lacy repeated the same thing to me.

6

Goran testified that he and Lacy went over hundreds of documents provided by Rnic pertaining to RLS's finances, and that Lacy assured him that the "financials" were "satisfactory." Lacy testified that he "would never tell any client that his business was unique and could not be appraised."

Lacy recommended that Goran form a limited liability company to purchase RLS, and on July 25, 2005, Goran executed GPLLC's incorporation documents, which Lacy drafted. Goran was GPLLC's sole member at the time of incorporation.

Also on July 25, 2005, Rnic and GPLLC executed a Sale of Assets Agreement (Sale Agreement), by which Rnic sold RLS to GPLLC for a price of $1,500,000. As a down payment, Goran and Maria agreed to transfer three Las Vegas properties worth approximately $378,000 to Rnic, with the rest of the sale price to be paid back by GPLLC in monthly installments based on the gross income of RLS. The agreement provided that closing would take place upon the transfer of Rnic's Public Utilities Commission (PUC) license to GPLLC.

That same day, GPLLC executed a $1,122,000 promissory note in favor of Rnic and a Management Services Agreement, whereby GPLLC agreed to manage and operate RLS until the transfer of Rnic's PUC license. Lacy prepared the Sale Agreement, the promissory note, and the Management Services Agreement. He also prepared a limited power of attorney allowing GPLLC to manage RLS on Rnic's behalf before the PUC license was transferred to GPLLC,

7

and a warranty bill of sale, both executed on July 25, 2005. Although the Sale Agreement provided that closing would occur once the PUC license was transferred, the bill of sale was transferred to GPLLC that same day.

After July 25, 2005, Goran and Maria received some training from RLS employees and began running the business. Goran testified that in November 2005, he received a phone call about RLS from a friend, who informed him that "the numbers were altered before it was sold." Goran testified that he subsequently met with Lacy several times and told him that "this surely looks like fraud," but Lacy downplayed Goran's concern and advised him to wait for the completion of the PUC license transfer before taking any action "as far as fraud." According to Lacy's notes from a February 14, 2006 meeting with Goran, "Mr. Pleho wanted to wait until he had the [PUC] license and then approach Mr. Rnic and try and resolve the problems. . . ." Rnic's PUC license was transferred to GPLLC on March 10, 2006.

**B.    Circuit Court Proceedings**

    **1.    Pretrial**

        Pleho Parties filed a complaint on July 6, 2006, naming Rnic and Lacy Parties as defendants. Pleho Parties asserted that they had purchased RLS for a price "far in excess of the actual fair market value" based on fraudulent information from Rnic. The complaint alleged that Lacy Parties had:

> failed, refused, and/or neglected to properly advise
> and assist [Pleho Parties] on the transaction and to
> safeguard them against the unconscionable terms of the
> agreement ultimately entered and, in fact, drafted the
> terms adverse to the interests of [Pleho
> Parties]. . . .  Further, [Lacy Parties] continued to
> represent [Pleho Parties] subsequent to the initial
> transaction and failed, refused, and/or neglected to
> take timely and appropriate action to foreclose or
> mitigate harm to [Pleho Parties] once the fraudulent
> conduct of [Rnic] was discovered.

Pleho Parties twice amended their complaint, which ultimately included the following counts against Rnic and Lacy Parties:  (I) conspiracy to commit fraud; (II) fraud; (III) fraud in the inducement; (IV) gross inadequacy of consideration; (V) IIED; (VI) NIED; (VII) UDAP; (VIII) legal malpractice (against Lacy Parties alone); (IX) intentional spoilation of evidence; (X) negligent spoilation of evidence; and (XI) punitive damages.  The second amended complaint alleged that Lacy intentionally misrepresented the value of RLS to Pleho Parties, and that Pleho Parties would not have purchased RLS if they had known that Rnic had agreed to sell the business to Rullo for only $800,000.

In their answer, Lacy Parties argued that Pleho Parties had caused or contributed to any injuries they suffered.  That same day, Lacy Parties also filed a cross-claim against Rnic.

Rnic filed an answer and counterclaim against GPLLC on September 26, 2006, alleging that:

> since the Management Service Agreement, GPLLC and
> [Goran] Pleho have failed to maintain [RLS] in a
> reasonable, profitable fashion, running the business
> into the ground, causing lost profits and decrease in

> the value of the business and goodwill, all to Rnic's detriment.

Rnic's counterclaim included six counts against GPLLC and Goran related to the sale and management of RLS, including breach of the Sale Agreement and promissory note for failure to make payments on the purchase price. Pleho Parties filed a cross-claim against Lacy Parties based on Rnic's counterclaim.

Rnic filed a motion for summary judgment on Pleho Parties' claims against him, which the circuit court granted on May 13, 2009.

Lacy Parties filed a Hawaiʻi Rules of Civil Procedure (HRCP) Rule 12(b)(6) motion to dismiss all counts of Pleho Parties' second amended complaint except for Count VII (UDAP) and Count XI (punitive damages), which the circuit court granted on May 13, 2009.

Pleho Parties filed a motion for reconsideration and clarification of the May 13, 2009 order granting Lacy Parties' motion to dismiss. On July 29, 2009, the circuit court entered an order denying and clarifying Pleho Parties' motion. The court stated that it was dismissing all counts but the following: for GPLLC, Counts II (fraud), III (fraud in the inducement), and VIII (legal malpractice); for Goran and Maria Pleho as individuals, Count VII (UDAP); and for GPLLC and Goran and Maria Pleho as individuals, Count XI (punitive damages). The court explained its reasoning as follows:

10

> Count I for conspiracy to commit fraud falls away
> because there is but one person accused and the prior
> co-conspirator has been judged not liable. . . .
> Because the conspiracy was alleged to have been
> between Defendant Rnic and Defendants David W. Lacy
> and Lacy & Jackson, LLLC, and Defendant Rnic was
> granted summary judgment on the count of conspiracy to
> commit fraud, there is no party for the remaining
> Defendants to conspire with.
>
> Count V and VI are properly dismissed by implication.
> There is no mental distress which can be suffered by a
> corporation. . . .
>
> Count VII for unfair and deceptive trade practices can
> not stand on behalf of [GPLLC], because a claim for
> unfair and deceptive trade practices is reserved by
> statute for consumers. . . . A corporation is not a
> natural person and does not have standing to bring a
> claim for unfair and deceptive trade practices under
> the statute. . . .
>
> Count VIII for legal malpractice was asked to be
> dismissed as to [Goran and Maria Pleho] as individual
> plaintiffs, because they had not suffered damages;
> they did not purchase, as individuals, the business
> that is the underlying subject of this case, and
> therefore did not suffer any individual damages
> relating to the purchase. The Court ruled in favor of
> the Defendants; therefore Count VIII for legal
> malpractice stands on behalf of the LLC alone.
>
> Count XI for punitive damages stands, based only on
> the claims still standing for [Goran and Maria Pleho]
> and the LLC. But because the only claim [Goran and
> Maria] can claim punitive damages for is unfair and
> deceptive trade practices, which awards double or
> treble damages, they should be held to only one form
> of recovery.

Lacy Parties subsequently moved for partial summary judgment on Goran and Maria's UDAP and punitive damages claims, which the circuit court granted.

On March 10, 2011, counsel for all parties appeared before the circuit court to enter two settlement agreements into

11

the record.  The first settlement agreement provided that Lacy's indemnity insurance company would pay Rnic $650,000 in exchange for releasing GPLLC from all claims arising out of the RLS Sale Agreement and promissory note, so as to "allow [GPLLC] to retain and operate RLS free and clear of any claims by or obligations to Rnic."  Rnic also agreed to the dismissal of his counterclaim against GPLLC.

The second settlement agreement provided that Rnic would release all claims against Pleho Parties in exchange for a stipulation of entry of judgment against Goran in the amount of $100,000, to be paid in twenty-five $4,000 installments.[5]

### 2.    Trial

Jury trial began on June 7, 2011 on GPLLC's remaining claims:  Count II (fraud), Count III (fraud in the inducement), Count VIII (legal malpractice), and Count XI (punitive damages).

Both Goran and Lacy testified at trial, giving their conflicting accounts of the events leading up to the sale of RLS.  Among the other witnesses called were two expert accountants, who offered competing appraisals of the value of RLS:  Lacy Parties' expert appraised RLS at $1,156,000, while Pleho Parties' expert Mark Hunsaker appraised RLS at $128,000.  On cross-examination, Hunsaker testified as follows:

---

[5]     Maria was not represented at the March 10, 2011 hearing and thus was not bound by the settlement.  Pleho Parties do not contest the settlement with Rnic in their application.

> [Lacy Parties' counsel]: Now, what you valued in this case . . . is the 100 percent equity interest in Goran Pleho, LLC dba Resorts Limousines as of July 25, 2005, on a controlling marketable basis?
>
> [Hunsaker]: Correct.
>
> [Lacy Parties' counsel]: Are you familiar with the "International Glossary of Business Valuation Terms"?
>
> [Hunsaker]: I am.
>
> [Lacy Parties' counsel]: Isn't that an authoritative source that business appraisers customarily rely on?
>
> [Hunsaker]: It is.
>
> [Lacy Parties' counsel]: Isn't the definition of equity the owner's interest in property after deduction of all liabilities?
>
> [Hunsaker]: Correct.

After Pleho Parties rested their case, Lacy Parties moved for JMOL on all remaining claims. Lacy Parties argued that these claims must fail for lack of damages because Rnic had agreed to release all claims against Pleho Parties as part of Lacy Parties' settlement with Rnic, i.e., any damages based on Pleho Parties' liability to Rnic no longer existed. According to Lacy Parties:

> Plaintiff's valuation expert, Mark Hunsaker, testified that he valued a 100% equity interest in RLS. His valuation was $128,000, but his own testimony establishes that valuation of the equity interest was an incorrect measure. Hunsaker agreed on cross-examination with the definition in the International Glossary of Business Valuation Terms, 2001 Ed., that equity is "the owner's interest in property after deduction of all liabilities." . . . Conversely, in order to obtain the actual value of RLS, which is the owner's interest in the property, Hunsaker would need to take the equity and add back in the liabilities.

13

> Based on Hunsaker's valuation of the equity at
> $128,000, and adding the $1,122,000 liability for the
> promissory note . . . the LLC's interest in RLS is
> valued at $1,250,000.
>
> . . . .
>
> Even viewing Plaintiff's evidence in the best light
> possible, as a result of the settlement, the LLC
> obtained a $1,250,000 business for $452,698 [$378,000
> (Plaintiff's down payment from the three properties)
> + $74,698 (the amounts paid to date)] . . . . Not
> only does the LLC have no damages, it actually came
> out ahead as a result of the settlement.

The circuit court orally granted the motion for JMOL as
to fraud, fraud in the inducement, and punitive damages, but
denied it as to legal malpractice, issuing a written order on
July 6, 2011. Regarding the fraud, fraud in the inducement, and
punitive damages claims, the court stated:

> looking at the evidence in light most favorable to the
> non-movant, the Court finds that no reasonable jury
> would be able to find by clear and convincing evidence
> that the defendants committed fraud or fraud in the
> inducement as well as awarding punitive damages.

The jury returned a Special Verdict on the legal
malpractice claim, finding that while Lacy breached the standard
of care in providing legal services to GPLLC, this breach was not
a legal cause of damages to GPLLC. Thus, the jury found that
Lacy Parties were not liable for legal malpractice.

The circuit court entered judgment in favor of Lacy
Parties on all claims asserted by Pleho Parties. Lacy Parties
moved for attorney's fees and costs, and the court awarded
$407,013.69 in attorney's fees and $29,191.96 in costs.

14

### 3.    The Motion in Limine

On June 9, 2009, Goran and Maria filed for Chapter 11 bankruptcy in the U.S. Bankruptcy Court for the District of Nevada.

On April 21, 2011, Lacy Parties filed a motion in limine to bar Pleho Parties from pursuing claims or introducing evidence regarding any alleged loan, debt, or other asset not specifically declared as an asset in the Nevada Bankruptcy Court action.  Lacy Parties asserted that there "is apparent discord and confusion between [Goran and Maria's] disclosures in the Nevada [bankruptcy] action and [Pleho Parties'] claims in this civil litigation."  Pleho Parties responded that they were not required to disclose GPLLC's debt to Goran and Maria in the bankruptcy proceedings, and that there was no evidence that Pleho Parties stood to gain unfair advantage by the alleged inconsistency.  On June 3, 2011, the circuit court orally denied the motion, noting, "[c]ertainly it goes to credibility versus admissibility."

At trial, Pleho Parties offered into evidence Exhibit 27-G(7), a check from Goran to GPLLC, in order to prove damages. Counsel for Lacy Parties objected based on lack of foundation and lack of relevance, but the circuit court received the check into evidence.

## C.   ICA Proceedings

Pleho Parties appealed to the ICA, and Lacy Parties filed a cross-appeal from the circuit court's order denying their motion in limine to bar evidence inconsistent with Pleho Parties' disclosures in their bankruptcy proceedings.

### 1.   Pleho Parties' Arguments

Pleho Parties raised four points of error before the ICA relevant to this opinion,[6] arguing that the circuit court erred in:  (1) granting Lacy Parties' motion to dismiss Pleho Parties' claims for conspiracy, inadequate consideration, IIED, NIED, and spoliation of evidence, and Goran and Maria's claims as individuals for fraud, fraud in the inducement, and malpractice; (2) granting Lacy Parties' motions for partial summary judgment as to Goran and Maria's UDAP and punitive damages claims; (3) granting the Lacy Parties' motion for JMOL as to GPLLC's claims for fraud, fraud in the inducement, and punitive damages; and (4) granting Lacy Parties' attorney's fees and costs.

First, Pleho Parties argued that they alleged sufficiently "outrageous" conduct that was "calculated to cause, and did in fact cause, extreme emotional distress," supporting the restoration of their IIED and NIED claims.  Pleho Parties further contended that although Lacy claimed that he only had an

_____

[6]     Pleho Parties also argued that the circuit court erred in (1) granting Rnic's motion to enforce settlement; and (2) granting Rnic's motion for summary judgment.  The ICA upheld both the settlement and summary judgment in Rnic's favor in its memorandum opinion, and Pleho Parties do not contest the rulings on Rnic's motions in their application for writ of certiorari.

16

attorney-client relationship with GPLLC, Goran and Maria were "real parties in interest" because they had been injured by his conduct.

Pleho Parties asserted that "by first eliminating [GPLLC] as a non-customer, and then dropping [Goran and Maria] because they were allegedly not his clients, the court denied [Goran and Maria] relief for prima facie unfair and deceptive trade practices." Pleho Parties argued that "a lawyer who deceives a client about the value a company he wishes to purchase, has not only committed malpractice, but also a deceptive trade practice."

Finally, Pleho Parties argued that JMOL for fraud, fraud in the inducement, and punitive damages was inappropriate. According to Pleho Parties, the circuit court disregarded "compelling evidence" supporting all three claims, which "cut the heart out of this case" and left the jury "with the absurd impression that [Pleho Parties] were seeking millions in damages because Lacy violated two or three technical provisions of the Hawai'i Rules of Professional Conduct."

## 2. Lacy Parties' Arguments

Lacy Parties asserted (1) that the circuit court abused its discretion when it denied the motion in limine regarding evidence inconsistent with Pleho Parties' disclosures in their bankruptcy proceedings; and (2) that the circuit court erred in "admitting evidence at trial of a payment made by [Goran] to

17

[GPLLC] when [Goran] did not disclose any such debt owed to him in the bankruptcy schedules." According to Lacy Parties, Goran and Maria claimed loans to GPLLC as damages in their civil lawsuit while failing to disclose any such loans in their bankruptcy proceedings. Lacy Parties argued that the circuit court should have applied judicial estoppel to prevent Pleho Parties from asserting these inconsistent positions, which gave them an unfair advantage and suggested that one court or the other was being misled.

### 3.     The ICA Amended Memorandum Opinion

The ICA addressed the circuit court's grant of Lacy Parties' motion to dismiss,[7] motion for summary judgment, and motion for JMOL in an unpublished Amended Memorandum Opinion.

Regarding conspiracy to commit fraud, the ICA found that the trial court did not err in granting dismissal, noting, "[t]here is no evidence in the record that the Lacy Parties intentionally participated in the sales transaction with a view to the furtherance of the common design and purpose."

As to fraud and fraud in the inducement, the ICA noted that, although it was GPLLC that had purchased RLS, Goran and Maria made a down payment of $378,000 on behalf of GPLLC. Thus, the ICA found that "we cannot conclude that it appears beyond

---

[7]     The ICA noted that the circuit court appeared to review "the record and file of the case" in evaluating Lacy Parties' HRCP Rule 12(b)(6) motion, making it appropriate to consider the motion under the HRCP Rule 56 motion for summary judgment standard as well.

18

doubt that [Goran and Maria] can prove no set of facts in support of their claim that they were real parties in interest and suffered damages in conjunction with" the transfer of their Las Vegas properties.  The ICA concluded that the circuit court erred in dismissing the fraud claims, but noted that Lacy Parties remained free to assert on remand that [Goran and Maria's] claims were barred by the jury verdict.

The ICA affirmed the circuit court's dismissal of Pleho Parties' IIED and NIED claims.  First, the ICA noted its agreement with the circuit court's conclusion that a corporation such as GPLLC cannot suffer mental distress.  Second, the ICA determined that, even accepting Goran and Maria's allegations as true, "we cannot conclude that reasonable people could construe Lacy's conduct as 'beyond all possible bounds of decency' . . . as required by our case law" for IIED.

Regarding Pleho Parties' NIED claims, the ICA noted that "Pleho Parties do not cite to any Hawai'i case law supporting recovery for NIED based entirely on a commercial transaction, and we find none."

The ICA found that the court properly dismissed GPLLC's UDAP claim because HRS Chapter 480 does not create a cause of action for corporations.

Regarding Goran and Maria's legal malpractice claims, the ICA found that there was a genuine issue of material fact as to whether Lacy formed an attorney-client relationship with Goran

19

and Maria.  The ICA concluded that the circuit court erred when it dismissed Goran and Maria's legal malpractice claim against Lacy Parties.  The ICA noted that its ruling "is without prejudice to the Lacy Parties asserting on remand that [Goran and Maria's] malpractice claims are barred by the jury's verdict."

The ICA then addressed the grant of Lacy Parties' motions for partial summary judgment on Pleho Parties' UDAP and punitive damages claims.  The ICA concluded that HRS Chapter 480 did not apply to Lacy's conduct in his capacity as a practicing attorney, citing numerous cases from other jurisdictions for the proposition that regulation of attorneys "does not fall within the ambit of consumer protection laws."  However, the ICA reinstated the punitive damages claims with respect to Goran and Maria's fraud and malpractice claims against Lacy Parties.

The ICA then addressed the grant of Lacy Parties' motion for JMOL on GPLLC's claims for fraud, fraud in the inducement, and punitive damages.  The ICA agreed with Lacy Parties' contention that Pleho Parties "obtained a $1,250,000 business for $452,698 (including the $378,000 down payment . . . and $74,698 that was otherwise paid, according to evidence entered at trial)."  Noting that Pleho Parties "failed to cite any evidence at trial that is contrary" to this argument, the ICA concluded that the circuit court did not err in granting the motion for JMOL in favor of Lacy Parties on fraud, fraud in the inducement, and punitive damages.

The ICA affirmed the circuit court's award of attorney's fees and costs to Lacy Parties regarding GPLLC's legal malpractice claim.  However, the ICA partially vacated the award to the extent that it held Goran and Maria jointly and severally liable, "as it is unclear whether the Lacy Parties will be determined the prevailing party against Goran and Maria, as well as GPLLC" on remand.

Finally, the ICA addressed Lacy Parties' cross-appeal, finding Goran and Maria's apparently inconsistent positions in their Nevada bankruptcy proceeding and the instant case established the elements required to invoke judicial estoppel. Accordingly, the ICA held the circuit court erroneously concluded that "the issue was a matter of credibility rather than admissibility, and did not reach the exercise of its discretion on whether to judicially estop [Pleho Parties] from asserting the factually incompatible position in this case."  The ICA thus vacated the circuit court's ruling on the motion in limine and the admission of Exhibit 27-G(7) to allow the circuit court "to exercise its discretion" on Lacy Parties' request for judicial estoppel "in the first instance."

The ICA entered judgment on October 13, 2016.

### III.   STANDARDS OF REVIEW

#### A.   Motion to Dismiss

> A trial court's ruling on a motion to dismiss is reviewed *de novo*.  The court must accept plaintiff's allegations as true and view them in the light most

21

> favorable to the plaintiff; dismissal is proper only
> if it appears beyond doubt that the plaintiff can
> prove no set of facts in support of his or her claim
> that would entitle him or her to relief.  However . .
> . a motion seeking dismissal of a complaint is
> transformed into a Hawai'i Rules of Civil Procedure
> (HRCP) Rule 56 motion for summary judgment when the
> circuit court considers matters outside the pleadings.

Wong v. Cayetano, 111 Hawai'i 462, 476, 143 P.3d 1, 15 (2006)

(internal quotation marks and citations omitted).

**B.    Motion for Summary Judgment**

The appellate court reviews "the circuit court's grant

or denial of summary judgment de novo."  Querubin v. Thronas, 107

Hawai'i 48, 56, 109 P.3d 689, 697 (2005) (citation omitted).

> A grant of summary judgment is "appropriate where
> there is no genuine issue as to any material fact and
> the moving party is entitled to judgment as a matter
> of law."  Ross v. Stouffer Hotel Co., 76 Hawai'i 454,
> 457, 879 P.2d 1037, 1040 (1994)(internal citation
> omitted).  In other words, "summary judgment should
> not be granted unless the entire record shows a right
> to judgment with such clarity as to leave no room for
> controversy and establishes affirmatively that the
> adverse party cannot prevail under any circumstances."
> State v. Zimring, 52 Haw. 472, 475, 479 P.2d 202, 204
> (1970) (internal citation omitted).  "A fact is
> material if proof of that fact would have the effect
> of establishing or refuting one of the essential
> elements of a cause of action or defense asserted by
> the parties."  Hulsman v. Hemmeter Dev. Corp., 65 Haw.
> 58, 61, 647 P.2d 713, 716 (1982) (internal citations
> omitted).

Balthazar v. Verizon Hawaii, Inc., 109 Hawai'i 69, 72, 123 P.3d

194, 197 (2005).

**C.    Motion for Judgment as a Matter of Law**

> "It is well settled that a trial court's rulings on
> [motions for judgment as a matter of law] are reviewed
> de novo."   Nelson v. University of Hawai'i, 97 Hawai'i

> 376, 392, 38 P.3d 95, 112 (2001) (internal citation omitted). When reviewing a motion for judgment as a matter of law, "the evidence and the inferences which may be fairly drawn therefrom must be considered in the light most favorable to the nonmoving party and [the] motion may be granted only where there can be but one reasonable conclusion as to the proper judgment." Id. (citing Carr v. Strode, 79 Hawai'i 475, 486, 904 P.2d 489, 500 (1995)).

Kramer v. Ellett, 108 Hawai'i 426, 430, 121 P.3d 406, 410 (2005).

## D.    Motion in Limine

> The granting or denying of a motion in limine is reviewed for abuse of discretion. The denial of a motion in limine, in itself, is not reversible error. The harm, if any, occurs when the evidence is improperly admitted at trial. Thus, even if the trial court abused its discretion in denying a party's motion, the real test is not in the disposition of the motion but the admission of evidence at trial.

State v. Eid, 126 Hawai'i 430, 440, 272 P.3d 1197, 1207 (2012) (quoting Miyamoto v. Lum, 104 Hawai'i 1, 7, 84 P.3d 509, 515 (2004)).

## IV.    DISCUSSION

Pleho Parties' application presents the following questions:

> A. Did the ICA commit grave error when it vacated orders dismissing claims by real parties in interest Goran and Maria for fraud and malpractice, which gutted this lawsuit, but affirmed dismissal of conspiracy, IIED, NIED and unfair and deceptive trade practices, and a judgment against [GPLLC] and $436,000 in fees and costs?

> B. Did the ICA commit grave error when it affirmed mid-trial orders dismissing claims against Lacy by [GP LLC] for fraud and punitive damages, despite substantial and credible evidence supporting those claims requiring their submission to the jury?

23

C. Did the ICA commit grave error when it vacated the trial court's order denying a motion in limine to bar evidence of loans to [GPLLC] because of unrelated bankruptcy proceedings brought by Goran and Maria, when Lacy failed to renew his objection to the evidence at trial?

The ICA vacated and remanded the circuit court's dismissal of Goran and Maria's fraud and legal malpractice claims.[8] At issue in Pleho Parties' application are several claims that the ICA did not restore, the award of attorney's fees, and the vacatur of the circuit court's denial of the motion in limine.

## A. Motion to Dismiss

### 1. Conspiracy to Commit Fraud

The circuit court relied on its grant of summary judgment in favor of Rnic when it dismissed the conspiracy count against Lacy Parties. The ICA thus reviewed the grant of Lacy

---

[8] The ICA noted that its ruling was "without prejudice" to Lacy Parties claiming on remand that the claims are barred by the jury verdict on GPLLC's malpractice claim. Respectfully, we disagree with the ICA's observations on that issue. Goran and Maria's claims as individuals are sufficiently distinct from GPLLC's that it appears collateral estoppel would be inappropriate in this instance. See Dorrance v. Lee, 90 Hawai'i 143, 149, 976 P.2d 904, 910 (1999) (delineating the elements of collateral estoppel, including, "(1) [that] the issue decided in the prior adjudication is identical to the one presented in the action in question").

We also note that we do not agree with Pleho Parties' assertion that the jury verdict on GPLLC's malpractice claim is a "nullity" because Goran and Maria were necessary parties under HRCP Rule 19(a) on all claims. Mandatory joinder under HRCP Rule 19 functions to "ensure[] due process for the absent party." Marvin v. Pflueger, 127 Hawai'i 490, 520, 280 P.3d 88, 118 (2012). Goran and Maria cannot claim that they were absent, as they initiated the lawsuit and their claims were heard in circuit court. See Mauna Kea Anaina Hou v. Bd. of Land and Natural Res., 136 Hawai'i 376, 389, 363 P.3d 224, 237 (2015) ("The basic elements of procedural due process are notice and an opportunity to be heard at a meaningful time and in a meaningful manner.") (citation omitted).

24

Parties' motion to dismiss as a HRCP Rule 56 motion for summary judgment, as it appears that the circuit court looked beyond the pleadings and reviewed the "record and file of the case." However, if on a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted,

> matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and <u>all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56</u>.

HRCP Rule 12(b) (emphasis added).

It does not appear that Pleho parties were given "reasonable opportunity to present all material made pertinent" by the conversion to a motion for summary judgment. It was thus improper for the circuit court to consider matters outside the pleadings in granting Lacy Parties' motion to dismiss as to the conspiracy count. Accordingly, the ICA erred in affirming the circuit court's grant of Lacy Parties' motion to dismiss the conspiracy count.

### 2. IIED

The elements of the tort of IIED are: 1) that the conduct allegedly causing the harm was intentional or reckless; 2) that the conduct was outrageous; and 3) that the conduct caused 4) extreme emotional distress to another. <u>Hac v. Univ. of Hawaii</u>, 102 Hawaiʻi 92, 106–07, 73 P.3d 46, 60–61 (2003). "The term 'outrageous' has been construed to mean without just cause

25

or excuse and beyond all bounds of decency." Enoka v. AIG Hawai'i Ins. Co., Inc., 109 Hawai'i 537, 559, 128 P.3d 850, 872 (2006) (citations and some internal quotation marks omitted). Additionally, "[t]he question whether the actions of the alleged tortfeasor are unreasonable or outrageous is for the court in the first instance, although where reasonable people may differ on that question it should be left to the jury." Young v. Allstate Ins. Co., 119 Hawai'i 403, 429, 198 P.3d 666, 692 (2008) (citation omitted).

The ICA concluded that Lacy's behavior, as alleged by Pleho Parties, did not reach the threshold of outrageousness required for IIED. We respectfully disagree. There is "no clear definition of the prohibited outrageous conduct," and the correct inquiry is simply whether "an average member of the community" would exclaim, "Outrageous!" Id. at 425, 198 P.3d at 688 (internal citations, brackets, and quotations marks omitted). Pleho Parties alleged that Lacy, their attorney, colluded with Rnic to defraud them of hundreds of thousands of dollars and three properties they owned in Nevada, causing Goran and Maria "severe emotional distress and serious physical injuries." Taking these allegations as true for the purposes of evaluating the motion to dismiss, we cannot say Goran and Maria have failed to state a claim for IIED. Accordingly, the ICA erred in

affirming the circuit court's dismissal of Goran and Maria's IIED claim.[9]

### 3. NIED

"[A]n NIED claim is nothing more than a negligence claim in which the alleged actual injury is wholly psychic and is analyzed utilizing ordinary negligence principles."[10]  Doe Parents No. 1 v. State, Dep't of Educ., 100 Hawai'i 34, 69, 58 P.3d 545, 580 (2002) (internal citation and quotation marks omitted).  Although the injury is wholly psychic, Hawai'i courts have generally held that an NIED plaintiff "must establish some predicate injury either to property or to another person in order [sic] himself or herself to recover for negligently inflicted emotional distress."  Id. (citing Rodriques v. State, 52 Haw. 156, 172, 472 P.2d 509, 520 (1970); John & Jane Roes, 1-100 v. FHP, Inc., 91 Hawai'i 470, 473, 985 P.2d 661, 664 (1999)).  This

---

[9]     The circuit court and the ICA dismissed GPLLC's IIED and NIED claims.  We hereby affirm these rulings, as a corporation cannot suffer emotional distress.  See RT Imp., Inc. v. Torres, 139 Haw. 445, 448 n.2, 393 P.3d 997, 1000 n.2 (2017) (indicating emotional distress damages cannot be awarded in favor of corporations).

[10]     A valid negligence claim has four elements:

> 1. A duty or obligation, recognized by the law, requiring the defendant to conform to a certain standard of conduct, for the protection of others against unreasonable risks;
> 2. A failure on the defendant's part to conform to the standard required: a breach of the duty;
> 3. A reasonably close causal connection between the conduct and the resulting injury; and
> 4. Actual loss or damage resulting to the interests of another.

Doe Parents, 100 Hawai'i at 68, 58 P.3d at 579.

court has, however, recognized NIED claims even absent a distinct, non-psychological injury when "they involve circumstances which guarantee the genuineness and seriousness of the claim."  Rodrigues v. State, 52 Haw. 156, 171, 472 P.2d 509, 519 (1970); see also Doe Parents, 100 Hawai'i at 70, 58 P.3d at 581 (finding that when a teacher is reinstated into a position in close contact with children after accusations of child molestation, without serious inquiry into the accusations, and the teacher molests the children, it is "self evident" that the children's and parents' resulting psychological trauma guarantees the "genuineness and seriousness" of parents' NIED claim).

In 1986, the legislature modified our common law tort of NIED in HRS § 663-8.9 (1986 Supp.), which provides:

> (a) No party shall be liable for the negligent infliction of serious emotional distress or disturbance if the distress or disturbance arises solely out of damage to property or material objects.
>
> (b) This section shall not apply if the serious emotional distress or disturbance results in physical injury to or mental illness of the person who experiences the emotional distress or disturbance.

Thus, a viable NIED claim for damage to property or material objects must allege:  (1) a duty or obligation, recognized by the law, requiring the defendant to conform to a certain standard of conduct, for the protection of others against unreasonable risks; (2) the defendant breached the duty; (3) a reasonably close causal connection between the defendant's breach and the plaintiff's resulting injury; and (4) serious emotional

28

distress or disturbance resulting in physical injury to or mental illness of the plaintiff, or circumstances guaranteeing the genuineness and seriousness of the claim.[11]  See Doe Parents, 100 Hawai'i at 68-88, 58 P.3d 545, 579-99 (plaintiffs stated a valid NIED claim for psychic injuries in the absence of physical injury or mental illness by establishing:  duty of care, breach of duty, legal causation, and circumstances guaranteeing the genuineness and seriousness of the mental distress alleged).  By this standard, Pleho Parties stated a claim for NIED upon which relief can be granted.

Pleho Parties alleged Lacy formed a "special relationship" with Goran and Maria "for which the law imposes a duty of care" when he undertook to represent Pleho Parties in the purchase of RLS.  Pleho Parties further alleged Lacy breached this duty and "[a]s a direct and proximate result," Goran and Maria "have suffered and continue to suffer from severe emotional distress and serious physical injuries and they have incurred and continue to incur reasonable and necessary medical and rehabilitative expenses for medical treatment" as a result of Lacy Parties' conduct.  Goran and Maria thus sufficiently stated an NIED claim by alleging, in addition to their claims of

---

[11]     In affirming the circuit court's dismissal of Pleho Parties' NIED claim, the ICA stated, "the Pleho Parties do not cite to any Hawai'i case law supporting recovery for NIED based entirely on a commercial transaction, and we find none."  However, whether the conduct at issue occurred in the context of a commercial transaction is irrelevant to whether the elements of an NIED claim have been sufficiently alleged.

emotional distress, that they suffered serious physical injuries and needed medical treatment for those injuries.  Accordingly, the ICA erred in affirming the circuit court's dismissal of Goran and Maria's NIED claim.

**B.   Judgment as a Matter of Law on Fraud, Fraud in the Inducement, and Punitive Damages**

The circuit court granted JMOL against GPLLC on its fraud, fraud in the inducement, and punitive damages[12] claims, determining that no reasonable jury would be able to find by clear and convincing evidence that Lacy "committed fraud or fraud in the inducement as well as awarding punitive damages."  We respectfully disagree.  The circuit court was required to view the evidence and inferences therefrom in the light most favorable to the non-moving party, i.e., GPLLC, and grant the motion only if "there can be but one reasonable conclusion as to the proper judgment."  Kramer, 108 Hawai'i at 430, 121 P.3d at 410.

"The elements of fraud are:  (1) false representations made by the defendant; (2) with knowledge of their falsity (or without knowledge of their truth or falsity); (3) in contemplation of plaintiff's reliance upon them; and (4)

---

[12]   "Punitive or exemplary damages are generally defined as those damages assessed in addition to compensatory damages for the purpose of punishing the defendant for aggravated or outrageous misconduct and to deter the defendant and others from similar conduct in the future."  Masaki v. Gen. Motors Corp., 71 Haw. 1, 6, 780 P.2d 566, 570 (1989) (citations omitted).

30

plaintiff's detrimental reliance."[13]  <u>Miyashiro</u>, 122 Hawai'i at 482–83, 228 P.3d at 362–63.

There was evidence at trial indicating that Lacy drafted the documents for GPLLC's purchase of RLS for $1.5 million, yet he did not disclose the fact that he had represented a prior prospective buyer, who had been poised to acquire the business for only $800,000.  Further, Goran testified that Lacy repeated Rnic's claims about RLS's value, i.e., "[t]his is a unique company, only one of this kind.  There's nobody to appraise this company.  It's worth $2 million, and $1.5 is just a great price."  Where there is a duty to exercise reasonable care to disclose a matter in question, failure to disclose the matter is considered a false representation for purposes of the fraud analysis.  <u>Santiago v. Tanaka</u>, 137 Hawai'i 137, 149, 366 P.3d 612, 624 (2016).  Here, Lacy had such a duty stemming from his fiduciary role as Pleho Parties' attorney.  Viewing such evidence in the light most favorable to GPLLC, we conclude that a reasonable jury could have found in favor of GPLLC on the fraud and punitive damages claims.

The ICA affirmed the circuit court's grant of JMOL with a different rationale, adopting Lacy Parties' argument that Pleho

---

[13]  Fraud in the inducement is simply a type of fraud which induces an action by fraudulent misrepresentation, so it is appropriate to analyze Pleho Parties' counts of fraud and fraud in the inducement together.  <u>See</u> <u>Aames Funding Corp. v. Mores</u>, 107 Hawai'i 95, 103-04, 110 P.3d 1042, 1050-51 (2005).

Parties could not show damages because the actual value of RLS was $1,250,000 even according to Pleho Parties' own expert. The ICA based its conclusion on the following exchange between Pleho Parties' expert accountant Hunsaker and Lacy Parties' counsel:

> [Lacy Parties' counsel]: Isn't the definition of equity the owner's interest in property after deduction of all liabilities?
>
> Hunsaker: Correct.

Hunsaker had previously testified that a "market analysis and conclusion of value of a 100 percent equity interest" in RLS at the time of sale was $128,000. The ICA thus attributed to Hunsaker the conclusion that that the "actual value" of RLS, i.e., "the owner's interest in the property," was the $128,000 "equity interest" plus the $1,122,000 promissory note to Rnic, for a total of $1,250,000.

Pleho Parties argue that the ICA's characterization of Hunsaker's testimony represents a "tortured interpretation of counsel's 'gotcha' question." We agree. "Equity" is an accounting term of art with a specific meaning, i.e., the "owner's interest in property after deduction of all liabilities." Based on his answer to a question about this technical definition, the ICA incorrectly imputed to Hunsaker the conclusion that the "actual value" of RLS was $1,250,000.

GPLLC's $1,122,000 debt to Rnic is a liability properly attributed to GPLLC, not to RLS. Thus, the ICA erred in

32

considering this amount when calculating the actual value of RLS. Moreover, since the crux of Pleho Parties' claim alleges Lacy fraudulently induced them to purchase RLS for far more than its true value, it would be improper to hold that, as a matter of law, a promissory note allegedly procured by fraud should be used as a measure of RLS's value. The true value of RLS thus remains a question properly left to the trier of fact.

To conclude, the circuit court erred in granting JMOL in favor of Lacy Parties on GPLLC's fraud, fraud in the inducement, and punitive damages claims.

## C. Attorney's Fees and Costs

The ICA upheld the circuit court's award of $407,013.69 in attorney's fees and $29,191.96 in costs to Lacy Parties, pursuant to HRS § 607-14 (Supp. 1997),[14] but vacated it "to the extent that it held Goran and Maria jointly and severally liable, as it is unclear whether the Lacy Parties will be determined the prevailing party against Goran and Maria, as well as GPLLC, after further proceedings on their remaining claims." Because we vacate the grant of JMOL against GPLLC on its claims for fraud

---

[14]    HRS § 607-14 provides, in relevant part:

In all the courts, in all actions in the nature of assumpsit and in all actions on a promissory note or other contract in writing that provides for an attorney's fee, there shall be taxed as attorneys' fees, to be paid by the losing party and to be included in the sum for which execution may issue, a fee that the court determines to be reasonable[.]

and punitive damages, we also vacate the award of attorney's fees to Lacy Parties, as it is unclear whether GPLLC will remain the "losing party" after the adjudication of these claims.

## D.   Judicial Estoppel

The circuit court denied Lacy Parties' motion in limine requesting that Pleho Parties be barred from introducing evidence inconsistent with their disclosures in Goran and Maria Pleho's bankruptcy proceeding in Nevada.  The ICA vacated the circuit court's ruling and the subsequent admission of Exhibit 27-G(7), finding that the Lacy Parties had demonstrated the elements[15] of

---

[15]     As correctly noted by the ICA:

Most jurisdictions apply judicial estoppel when, at minimum, the following elements are met:

(1) The party to be estopped must be asserting a position that is factually incompatible with a position taken in a prior judicial or administrative proceeding;

(2) the prior inconsistent position must have been accepted by the tribunal; and

(3) the party to be estopped must have taken inconsistent positions intentionally for the purpose of gaining unfair advantage.

Although Hawaiʻi courts have not expressly adopted those elements, our case law is generally in accord.  See Roxas, 89 Hawaiʻi at 124, 969 P.2d at 1242; Rosa, 4 Haw. App. at 220, 664 P.2d at 752 ("A party is precluded from subsequently repudiating a theory of action accepted and acted upon by the court.").

Langer v. Rice, No. 29636, 2013 WL 5788676, at *5 (Haw. App. Oct. 28, 2013) (mem.) (citations omitted).

34

judicial estoppel.  The ICA explained that the purpose of vacatur was "to allow the Circuit Court, in the first instance, to exercise its discretion on the Lacy Parties' request for judicial estoppel."

Although the ICA correctly states the elements of judicial estoppel, its conclusion that the circuit court failed to exercise its discretion is not supported by the record.

As noted by the United States Supreme Court, "judicial estoppel is an equitable doctrine invoked by a court at its discretion," intended to "prevent the improper use of judicial machinery."  New Hampshire v. Maine, 532 U.S. 742, 750 (2001) (internal citations and quotation marks omitted).  The circuit court's oral denial of the motion in limine states, in full:

> So on the motion in limine Number 2, to bar plaintiff
> from pursuing claims for or introducing any evidence
> regarding any alleged loan, debt, note, payment,
> advance, contract or other asset not specifically
> disclosed in Goran Pleho and [Maria] Pleho's Nevada
> bankruptcy, the motion is denied.  Certainly it goes
> to credibility versus admissibility.

Although terse, this statement shows that the court considered the arguments presented in Lacy Parties' motion in limine and Pleho Parties' response to that motion, both of which focused on the issue of judicial estoppel.  Accordingly, the circuit court's denial of the motion in limine should be

35

interpreted as a discretionary determination that judicial estoppel was not appropriate in this instance.

As the circuit court properly exercised its discretion, we vacate the ICA's judgment to the extent that it vacates the circuit court's denial of the motion in limine, and we affirm this ruling of the circuit court.

## V. CONCLUSION

For the foregoing reasons, we vacate the circuit court's dismissal of Pleho Parties' IIED and NIED claims, its grant of JMOL in favor of Lacy Parties on GPLLC's fraud and punitive damages claims, and its award of attorney's fees and costs, and we vacate the ICA's October 13, 2016 judgment to the extent that it affirms these rulings of the circuit court. We also vacate the ICA's judgment to the extent that it vacates the circuit court's ruling on the motion in limine.

A majority of this court also vacates the ICA's judgment to the extent that it affirms the circuit court's grant of summary judgment in favor of Lacy Parties on Goran and Maria's UDAP claim.

In all other respects, the ICA's judgment is affirmed. The case is remanded to the circuit court for proceedings consistent with this opinion.

Peter Van Name Esser
for petitioners

Jodie D. Roeca (Norma K. Odani
with her on the briefs)
for respondents

/s/ Mark E. Recktenwald

/s/ Paula A. Nakayama

/s/ Sabrina S. McKenna

/s/ Richard W. Pollack

/s/ Michael D. Wilson

